HENRY F. BURK, Appellee, v. CREAMERY PACKAGE MANUFACTURING CO., Appellant.

**Sale of poison:** NEGLIGENCE. The sale of poisonous substances without labeling the same as required by law, is negligence *per se.*

**Proximate cause of death.** In an action for the death of plaintiff's son caused from drinking a poisonous liquid sold by defendant without labeling as required by law, it was incumbent on plaintiff to show that such violation of the statute was the proximate cause of the death.

**Intervening negligence.** Negligence on the part of the purchaser of poison will not necessarily excuse the vendor for his violation of the law requiring it to be labeled.

**Negligence.** It is not necessary that one should foresee the consequences of a wrongful act to be liable for an injury resulting therefrom.

**Proximate cause.** Where several proximate causes contribute to an accident, and each is an effective cause, the result may be attributed to any or all of the causes.

**Negligence.** Where a jug of poison was deposited in a creamery at a place where similar receptacles were usually kept containing buttermilk, permission of the creamery manager to take a drink of buttermilk was not of itself negligence, it not appearing that he knew one of the jugs to contain poison.

**Instruction:** PROXIMATE CAUSE. In an action for negligence, it is not error for the court to use the term "proximate cause" in an instruction, without defining it.

Same.  Under the issues, an instruction that the fact that employés of
a creamery, at which place the deceased drank poison from a jug
supposed to contain buttermilk, knew the jug contained poison, did
not relieve defendant from the charge of negligence, provided it
sold the same without labeling as required by law, was not objec-
tionable as eliminating from the case the doctrine of proximate
cause.

*Appeal from Black Hawk District Court.*— Hon. Franklin
C. Platt, Judge.

Thursday, March 9, 1905.

Action at law to recover damages for injuries received
by plaintiff's minor son, resulting in his death, from drink-
ing sulphuric acid out of a jug in which the drug was sold
by the defendant without labeling the same as required by
law.   Trial to a jury, verdict and judgment for plaintiff,
and defendant appeals.— *Affirmed.*

*J. T. Sullivan,* for appellant.

*Gates & Liffring* and *Bois & Bois,* for appellee.

Deemer, J.— Defendant is a corporation engaged in
the manufacture and sale of creamery supplies, fixtures, etc.,
at the city of Waterloo.   It keeps for sale, and sells, sul-
phuric acid, which is extensively used in all creameries.   On
or about January 26, 1903, it sold at retail to one Riedel a
one-gallon jug of sulphuric acid, but failed to label the same
as required by statute, or to indicate in any manner upon
the package that it contained a deadly poison.   Riedel
owned and operated what was known as the " Crane Creek
Creamery," in a rural community in Black Hawk county,
and he took the jug containing the acid to his said creamery,
and placed it upon a shelf in one of the rooms thereof.   It
was the custom at this creamery to put buttermilk in jugs
similar to the one in which the acid was placed, for the

use of customers and employés of the creamery, who were invited and permitted to drink the milk placed therein: Harry O. Burk, plaintiff's minor son, who was then seventeen years of age, was lawfully at the creamery on the 9th day of February, 1903, and seeing the jug containing the acid, asked an employé at the creamery if he could have a drink of buttermilk. The employé, not knowing that the boy had his eye on the sulphuric acid jug, but supposing that he was referring to another close at hand which did contain buttermilk, told him that he could, and invited him to drink of the milk. Burk went to the jug containing the acid, and, supposing that it contained buttermilk, drank therefrom, and, as a result thereof, died the next day. The acid was taken about two o'clock in the afternoon of a bright day, and the room in which the jug was kept was well lighted. Burk's eyesight was good, and he could easily have seen a label had one been placed upon the jug. Creameries universally use sulphuric acid for the purpose of testing milk and cream for butter fat, and this the defendant company well knew. The jug containing the acid was a little larger than the buttermilk jug; but both were one-gallon white jugs, and there was nothing in general appearances to distinguish one from the other. Defendant knew that it was the custom of all creameries to provide buttermilk for people to drink, and that patrons thereof carried the same away for use at their homes.

Code, section 4976, provides, in substance, that if any person deliver to another any poisonous liquor or substance without having the word "poison," and the true name thereof, written or printed upon a label attached to or affixed upon the vial, box, or parcel containing the same, he shall be guilty of a misdemeanor. And sections 2588 and 2593 also prohibit the sale of poisons, except that the same be labeled as therein required. Violation of such statutes is universally held

1. SALE OF POISON: negligence.

to be negligence.  *Ives v. Weldon,* 114 Iowa, 476, and cases cited.

But defendant contends that this negligence was not the proximate cause of the injury to the plaintiff's son.  It was, of course, incumbent upon the plaintiff to show, not only a violation of one or the other of these sections of the Code, but also that such violation was the proximate cause of the injury and death of his son.  That matter was submitted to the jury under proper instructions, and it found for the plaintiff on this issue.

2. PROXIMATE CAUSE OF DEATH.

But it is said that Riedel, the owner of the creamery, was also guilty of negligence in placing the jug in the creamery at the place he did, that this negligence was the approximate cause of the injury to plaintiff's son, and that the defendant had no reason to apprehend or anticipate any negligence on the part of the purchaser of the acid.  As said in the Ives Case, *supra,* these statutes were made for the protection of all persons in the State, and to warn all that the substance they are handling is dangerous, and that its use requires constant care.  Defendant, as we have said, knew of the custom which prevailed among creameries, knew that buttermilk is kept there for the use of patrons, and that sulphuric acid is used in all creameries.  It knew, or should have known, that any one lawfully about the creamery was likely to pick up this jug, and to use the same for any legitimate purpose.  It owed a duty to any one who might rightfully handle or use the jug in the ordinary, usual, or customary manner.  This jug had to be kept about the creamery, and there was no statutory or other obligation on the part of the creamery owner to keep it under lock and key.  Of course, if he knew that it was not labeled, or by the use of ordinary care should have known of that fact, he would be required, on account of the dangerous character of the acid, to use due care to protect all persons who might rightfully come in contact

3. INTERVENING NEGLIGENCE.

therewith. But failure on the part of the purchaser to do this would not necessarily excuse the vender for his violation of law.

But defendant insists that it had no reason to anticipate the wrongful or negligent acts of the manager of the creamery, and that it is for that reason not liable for the consequences thereof. While there are some loose expressions in the books to the effect that one is not liable for negligence unless the results of his acts might reasonably have been foreseen by him, the true doctrine, as we understand it, is that it is not necessary to a defendant's liability that the consequences of his negligence should have been foreseen. It is sufficient if the injuries are the natural, though not the necessary or inevitable, result of the wrong; such injuries as are likely, under ordinary circumstances, to ensue from the act or omission in question. The test, after all, is, would ordinary prudence have suggested to the person sought to be charged with negligence that his act or omission would probably result in injury to some one? The particular result need not be such as that it should have been foreseen. *Palmer v. R. R. Co.,* 124 Iowa, 424; *Hazzard v. City,* 79 Iowa, 106; *Doyle v. R. R. Co.,* 77 Iowa, 607; *Osborne v. Van Dyke,* 113 Iowa, 557. In applying this doctrine to cases where there is an intervening agency, it is generally held that the intervening act of an independent voluntary agent does not arrest causation, nor relieve the person doing the first wrong from the consequences thereof, if such intervening act was one which would ordinarily be expected to flow from the act of the first wrongdoer. *Lane v. Atlantic,* 111 Mass. 136.

**4. NEGLIGENCE.**

Where several proximate causes contribute to an accident, and each is an efficient cause, without the operation of which the accident would not have happened, it may be attributed to all or any of the causes; but it cannot be attributed to a cause unless without its operation the accident would not have hap-

**5. PROXIMATE CAUSE.**

pened. These rules have full support in our cases. *Walrod v. Webster Co.,* 110 Iowa, 349; *Harvey v. Clarinda,* 111 Iowa, 528; *Buehner v. Creamery Co.,* 124 Iowa, 445; *Palmer v. R. R. Co.,* 124 Iowa, 424; *Gould v. Schermer,* 101 Iowa, 582; *Liming v. R. R. Co.,* 81 Iowa, 246; *Schnee v. City,* 122 Iowa, 459; *Ives v. Weldon, supra.*

Referring now to the facts. The jury was fully justified in finding that but for defendant's act or omission the accident in question would not have happened. Under the testimony, the injury to plaintiff's son might well have been found to be the direct and proximate result of defendant's failure to label the jug containing the poison. Had it been labeled, the accident would not have happened, even though the managers of the creamery may have been negligent in placing it where they did. Moreover, had it been properly labeled, the jury might well have concluded that there would have been no negligence on the part of the creamery managers in placing it where they did.

The direction to plaintiff's son to drink out of a jug was not of itself negligence. The person giving the permission did not know that the boy had in mind the jug containing the acid, and there is nothing to show that this person even knew there was a jug there containing acid. It was a question for the jury, under proper instructions, to determine whether or not defendant's negligence was the proximate cause of the accident. See cases hitherto cited. The instructions given by the trial court on that subject were correct, and with the finding of the jury thereunder we are not disposed to interfere.

6. NEGLIGENCE.

The defendant might reasonably have foreseen that its act or omission was likely to cause injury to some one who might rightfully handle the jug, and it is not enough for it to say that it could not reasonably have foreseen the exact mishap. None of the cases cited and relied upon by appellant announce a contrary doctrine, although in some of

them expressions are used which, in a measure at least, give color to its propositions. With reference to these, and to all other cases bearing upon the subject, it may be said that no one has as yet given a very satisfactory definition of proximate cause. Indeed, one must of necessity look to practical distinctions on this subject, rather than to merely academic or theoretical ones, and, after all is said, each case must be decided largely on the special facts belonging to it. At most, the act of Riedel was a concurring and co-operating fault, and not in itself the producing cause of the injury.

II.   Contributory negligence on the part of plaintiff's son is said to have been affirmatively shown by the testimony. We do not think so. This question, like the other, was for the jury, and with its conclusion on this subject we are content.

III.   In referring to the matters which plaintiff should prove in order to be entitled to a verdict, the court used the term " proximate cause," without otherwise defining it. This is complained of.   The complaint is without merit.   *Theissen v. Belle Plaine,* 81 Iowa, 118; *Miller v. Boone County,* 95 Iowa, 5. Were it otherwise, we should find that the matter was fully covered in subsequent instructions, notably the twelfth.

**7. INSTRUCTION: proximate. cause.**

IV. In another instruction the court said, in effect, that the fact that Riedel and another employé of the creamery knew the jug contained sulphuric acid would not, as respects the issues in the case, relieve the defendant from the charge of negligence, provided the defendant sold and delivered the acid without complying with the statutes. It is contended that this removed the doctrine of proximate cause from the case. This is incorrect. The instruction is good as far as it went, and the question of proximate cause was fully and correctly covered by other instructions. In other words, the negligence of the owner or manager of the creamery would not relieve defendant from the charge of negligence, provided the jury

**8. SAME.**

found that defendant's negligence was the proximate cause of the accident. That instructions must be taken and construed together is fundamental, and, when that is done in this case, there is no error of which defendant may justly complain.

Another instruction with reference to Burk's conduct in drinking out of the jug, in its bearing upon the question of contributory negligence, is complained of. It left to the jury the question of Burk's conduct in this respect, in view of the statement made to him by the employé of the creamery when he asked for permission to drink, for it to determine whether or not he acted with reasonable prudence and care in drinking from the jug in the manner shown. There was no error in this. It did not, as defendant contends, take from the jury the question of proximate cause.

The twelfth instruction, with reference to proximate cause, is also challenged. It announces the rules heretofore stated in this opinion clearly and distinctly, and we need not set it out *in extenso*.

The principal point in the case is the doctrine of proximate cause as applied to the facts disclosed by the record. We think there was sufficient testimony to take the case to the jury on this proposition.

There is no error in the record, and the judgment is *affirmed*.