GARY KAPPHAHN, by C. I. KAPPHAHN, his father and next friend, Appellant, v. MARTIN HOTEL COMPANY et al., Appellees.

No. 45575.

June 17, 1941.

Lester C. Davidson and Robert J. O'Connor, for appellant.

Sifford & Wadden, for appellees.

Bliss, J.—The plaintiff is a boy about two years old, and this action was brought in his behalf by his father. He alleged in his petition that: the defending corporations operate the "Martin Hotel" at the corner of 4th and Pierce Streets in Sioux City, a busy business corner where many people continually pass by on the adjacent sidewalks; about 5:00 o'clock in the afternoon of July 29, 1940, a screen fell from the window of room 424 of the hotel and struck and injured the plaintiff while being carried along the sidewalk by his father; a parade was due along the street and one of the hotel guests in room 424, desiring to look down 4th Street to see if the parade was coming, raised the screen to look out and it fell from his hands to the sidewalk; the plaintiff was free from contributory negligence; the proximate cause of the falling of the screen and the injury to plaintiff was the negligence of the defendants in the following particulars:

"a. In constructing the guides that held the screen, in such a manner that they released the screen when an attempt was made to raise said screen.

"b. In maintaining said screen guides and in permitting them to remain in such a condition that they released said screen when an attempt was made to raise it.

"c. In failing to install handles at the base of said screen so that said screen could be held when it was released by the screen guides.

"d. In failing to install a pin, screw, or similar device to

prevent the screen from being raised to a point where said guides would release it.

"e. In failing to place somewhere near the window or in the room, a sign warning that the screen should not be raised without caution because of the danger that said screen would be released by the screen guides.

"f. In failing to properly fasten said screen to the building.

"g. In failing to install some simple safety device such as a rope connecting said screen to the building."; the plaintiff was severely and permanently injured.

The Eppley Hotels Company filed answer denying the allegations of the petition. The Martin Hotel Company filed separate answer admitting that "it is a corporation, and that it is operating a hotel at the corner of 4th and Pierce Streets in Sioux City under the name of the Martin Hotel," and denying all other allegations of the petition.

There is little conflict in the evidence. It appears quite conclusively that: the plaintiff was injured by a screen falling as alleged; this particular screen was placed on the window in room 424, between April 15th and May 1, 1940, by the regular carpenter of the hotel, who had been thus employed for 20 years, and one of whose duties was to keep the screens in good condition, and to put them on in the spring, and take them off in the fall of the year; all of the screens on the first six floors along the street are constructed the same, and are attached to the windows in the same manner; the window in room 424 is 44 feet above the street, and one standing inside the window has a plain view of the street below without raising the window; this window is 54 inches wide and is 67 inches from top to bottom; the lower sash is 38 inches high, and the upper sash is 29¼ inches high; the screen covers the lower sash only and it is 53 inches wide and 38 inches high; the frame of the screen is of wood, and along the entire length of each upright of the screen on the face next to the window frame is a groove in the wood 9/16ths of an inch deep; each groove engages and slides up and down on and along a hard oak-wood tongue, a quarter of an inch thick and a half inch deep; each tongue is firmly fastened to the side of the window frame, and fits into the groove approxi-

mately a half inch; on the left window frame, to one facing the window, the tongue is 39 inches long; on the opposite, or right-hand window frame, the tongue is approximately 29 inches long, and, the top of the tongue is approximately 38 inches below the top of the window frame; on the top surface of the bottom dimension of the frame of the screen, are two metal fixtures, or handles, into which the fingers of each hand may be inserted to raise the screen; each of these handles is near the foot of each upright of the screen frame; when the screen is down and the tongues are engaged in the grooves, it is firmly fastened, and cannot be blown, or forced in or out or be displaced in any way unless the force is great enough to break the framework of the screen or one or both of the tongues; in order to take it out, the screen must be raised approximately 30 inches to the top of the window frame; this raises the right-hand groove a quarter of an inch above the tongue on that side and disengages the tongue and groove on that side; when the top of the frame of the screen reaches the top of the window frame, approximately 9 inches at the bottom of the left groove is engaged with the tongue on that side; the right-hand upright of the frame of the screen is flush against that side of the window frame; when the screen is in position, there is very little end play—approximately 1/16th of an inch; when the screen is raised to the top of the window and the right side is pushed outward, the left side becomes fully disengaged and the screen is free from the window frame; when the screen is so raised, there is only a quarter inch of clearance above the tongue on the right side; the screen is affixed in this manner so that it can be taken out and replaced with the change in seasons, and so the windows can be washed, or be raised for the convenience or need of the occupant of the room; the screen in all its parts and the tongues were in what a witness described as "No. 1 condition"; the lower window does not push up the whole distance of 38 inches; the screen could not be raised high enough to permit it to be removed by keeping hold of the handles, because the lower sash could not be raised that high, and would prevent the screen from being raised higher in that manner; July 29, 1940, was a hot day; the entire fourth floor, including room 424, was air-conditioned,

and on the window in that room and the other rooms was a sign reading: "To obtain best results from air-conditioning please keep doors and windows closed"; the guest, Ballard, who raised the window and the screen to look for the parade, had been an occupant of a room on the sixth floor for some weeks; on July 29, 1940, he was in a business conference in room 424; the same type of screen was used in his room; he knew that tongues on each side fitted into the grooves, but had never raised the screen in his room, and did not know that the tongue on the right side was lower than the left one; his only purpose in raising the window and screen was to stick his head and shoulders out of the window underneath the screen to see if the parade was coming; the guests of the hotel have at times raised the screens to throw out paper and other light articles, and sometimes, in the non-air-conditioned rooms, would raise the screens a little. The foregoing statement covers quite fully the testimony material to the questions before us. The matters of record showing the relation of the defendants to the building, are the answer of the Martin Hotel Company that it operates the hotel, and the testimony of the manager of the Eppley Hotels Company that it operated the hotel. The capacity in which either operated the hotel, whether as owner, lessee, or in some other relation, does not appear.

At the close of plaintiff's testimony, the defendants moved for a directed verdict in their favor. The grounds of the motion were alleged in fifteen separate paragraphs. The court sustained the motion generally.

The errors assigned are: sustaining the motion to direct; requesting the foreman of the jury to sign the verdict; and, entering judgment dismissing plaintiff's action.

I. The motion for a directed verdict was rightly sustained if any ground thereof was good. Phillips v. Briggs, 215 Iowa 461, 465, 245 N. W. 720; Furgason v. Bellaire, 197 Iowa 277, 283, 197 N. W. 13. Among the grounds of the motion are the following, in substance: there is no competent evidence upon which the case could be submitted to the jury; plaintiff has failed to sustain the burden of proof and has failed to prove any of the grounds of negligence alleged; there is no competent evi-

dence of defective construction, inspection, or maintenance; the evidence shows that the screen did not fall through an act or omission on the part of either defendant, but did fall through the independent negligent act of a third person, which was the proximate cause of the injury; there is no competent evidence to sustain a verdict based on an obligation of either defendant to maintain the exterior of the building, or that either had anything to do with the original construction of the building and of the screens, screen guides, or tongues; or was under obligation to maintain them; and, that the evidence affirmatively shows the screen was fastened in a reasonably prudent manner and so maintained.

██ ██ Does the record establish negligence as alleged by plaintiff? If the answer is nay, that is an end of the case. Grounds of negligence alleged in the petition, and lettered (d) and (g), need be given no further consideration. The first alleged failure to install a pin, screw, etc., to prevent the screen from being raised above the guides, and the last alleged failure to fasten the screen to the building with a rope or other simple safety device. Testimony to support the allegations was refused on objection. Allegations of fact must be not only pleaded, but established by proof. Appellant urges that this court should take judicial notice of the truth of the matters alleged. This we cannot do. Furthermore, the appellant has assigned no error upon the court's ruling on the refusal of the testimony. There is, therefore, nothing before us for review on this particular matter. Bodholdt v. Townsend, 208 Iowa 1350, 1353, 227 N. W. 404.

. ██ ██ Alleged ground of negligence, lettered (c), refers to the failure to install handles at the base of the screen so that it could be held when released by the screen guides. There is no testimony as to the kind or size of the proposed handles, or where they could be placed. We have a miniature model of the screen and window frame before us. The screen is just to the outside of the lower sash and passes outside of the upper sash. We cannot determine from the record or from the model whether the proposed handles, if attached to the face of the lower part of the screen frame, would interfere with the raising or lowering of either sash. But it appears to us, that the handles were properly

placed, and were so placed for a purpose. It is not disputed that they were ample and effective to raise the screen. That was their only purpose in being placed on the screen. In being so placed, they served every reasonable purpose of an occupant of the room. It further conclusively appears, as will be hereinafter more clearly shown, that, if the handles were used to raise the screen, it could not become released from the guides or tongues on either side, because the bottom of the lower sash would prevent the raising of the screen to a sufficient height to release it from the guides or tongues. That was the evident and careful purpose in placing the handles where they were placed. The handles, under the record made, and under the physical facts, had nothing to do with the falling of the screen. The plaintiff failed to establish this alleged ground of negligence.

With respect to allegation (a) of the grounds of negligence, there is no evidence whatsoever that either defendant had anything to do with the construction of the screen guides. It is also our judgment that with respect to the other allegations of negligence—grounds (b), (e) and (f)—and to all of the lettered grounds of alleged negligence, the plaintiff failed to establish the existence of any negligence, or the breach of any duty of either defendant to the plaintiff, or any causal connection between any act or omission to act on the part of either defendant, and the injury to the plaintiff.

It appears, without question, that the screen in all of its parts and the guides or tongues were of good and proper material and in a good state of repair. There were no defects in their physical condition. They served every reasonable need or convenience of the defendants, and of their guests, occupying that room. The evidence also establishes that when the screen was down it could not fall or endanger anyone on the sidewalk except it be forcibly broken or dislodged. Neither was there any such exposure to danger from its falling when it was raised if it was not raised above approximately 29 inches. Even when it was raised above that height and to the top of the window frame, the tongue on the left side was engaged in the groove for a distance of 9 inches from the bottom and some outward force would have to be applied to the right-hand side to completely disengage

the screen. It could not be raised to this height by use of the handles. This appears conclusively from the physical facts, and is confirmed by the testimony of the hotel carpenter. He stated: "The lower window will not go up high enough so you can keep your hands on the screen as far as you have to raise it. That is what I meant, that you couldn't get the screen up by having a hold of the handles. You can't raise the screen high enough by lifting it on the handles to get it out of these guides." To remove the screen to wash the window, or to take it down before the winter season, it was necessary to reach behind the lower sash and apply upward pressure on the bottom of the screen frame, and then push out the right side of the screen. There was no occasion or need for anyone to do this except an employee of the defendants. Of course, if such an employee should do this so negligently as to permit the screen to fall and injure someone, the defendants would be liable. It is the argument of the appellant that the appellees in thus constructing and affixing the screen and tongues in this manner, so as to permit its use in the manner described, and its removal and replacement as stated, created a condition that might become harmful to anyone on the street below, should a third person negligently raise the screen so as to let it fall. Appellant claims that the chance of injury in some such manner was reasonably foreseeable and that appellees were negligent in permitting the condition to exist, and that such negligence was the legal or proximate cause of plaintiff's injury. That is the determinative issue in this case. We do not agree with appellant's contention. The operator or occupier of a hotel or other building is bound to use reasonable and ordinary care to maintain it in such condition as not to be a source of danger to persons using the streets adjacent thereto. He is not an insurer, however. "When due care consists in taking precautions against harm, only reasonable precautions need be taken, not every conceivable or possible precaution. And precautions need not be taken against every conceivable or foreseeable danger, but only against probable dangers." Henry T. Terry, Essay on Negligence, Selected Essays on the Law of Torts, 263. "The dictates of ordinary care do not impose unusual and unreasonable burdens." Sherlock v. Strouss-Hirshberg Co., 132

Ohio St. 35, 44, 4 N. E. 2d 912, 916. In Odell v. Solomon, 99 N. Y. 635, 637, 1 N. E. 408, 410, a case in which the plaintiff was struck by a falling window sash, the court said: "Reasonable care is all that the law requires, and what is reasonable care depends upon the nature of the property, and the danger in its use ordinarily to be apprehended." In describing this care Cardozo, C. J., in Caspersen v. La Sala Bros., 253 N. Y. 491, 495, 171 N. E. 754, 755, said: "In the striving after safety, owner or contractor is not required to go beyond the bounds of what is practicable and reasonable." The rule with respect to the probability of a third person's intervening and causing an existing condition to become harmful is thus expressed in the American Law Institute's Restatement of the Law of Torts, 816, section 302 (c): "If the actor's conduct has created a situation, which is harmless if left to itself but is capable of being made dangerous to others by some subsequent action of a human being or animal or the subsequent operation of a natural force, the actor's negligence depends upon whether he as a reasonable man should recognize such action or operation as probable."

■ If a harmful consequence was not reasonably foreseeable, that is, was an improbable consequence, one which could not reasonably have been anticipated, there is no negligence.

"Foresight of harm furnishes the test of liability * * *." 1 Street, Foundations of Legal Liability. "In order to establish the existence of negligence, it must of course appear that there was a duty to use care and an omission to perform that duty. Whether there was a duty upon defendant to use care depends upon the probability that some harm would result to plaintiff in the absence of care." Jeremiah Smith, Essay on Legal Cause in Actions of Tort, Selected Essays on the Law of Torts, page 695.

This court has uniformly recognized the rule that reasonable foreseeability of harm is the fundamental basis of the law of negligence. As stated in Butters v. Chicago, M. & St. P. R. R. Co., 214 Iowa 700, 709, 243 N. W. 597, 601, "The defendant company is not bound to safeguard against occurrences that cannot be reasonably expected or contemplated as likely to occur. As said in Cox v. Des Moines Electric Light Co., 209 Iowa 931

[229 N. W. 244] : 'Due care consists in guarding, not against possibilities, but only against probabilities.' Any failure to ward against a result which could not reasonably have been expected is not negligence." See also in support, Gray v. Des Moines, 221 Iowa 596, 265 N. W. 612; Godbey v. Grinnell Elect. & Heating Co., 190 Iowa 1068, 1078, 181 N. W. 498, 502; Burk v. Creamery Pkg. Mfg. Co., 126 Iowa 730, 734, 102 N. W. 793, 106 Am. St. Rep. 377. Our latest pronouncement in the matter is Blessing v. Welding, 226 Iowa 1178, 1182, 286 N. W. 436, 439, as follows: "Ordinarily it is said that where a second force intervenes, liability depends upon whether or not that second force may be anticipated to be the natural and probable consequence of the negligent act of the first party."

In the case before us, the harmless act of the defendants was made harmful solely by the unexpectable act of a negligent third party. As said in Gant v. Gant, 197 N. C. 164, 166, 148 S. E. 34, 35, one is not required to "stretch foresight into omniscience."

As prudent men, those in charge of the operation of the hotel had done everything that could be reasonably expected of them, not only to provide for the needs and comforts of their guests using this room, but to reasonably safeguard anyone on the street below from being struck by the falling screen. The extreme height of the opening for one who desired to put his head and shoulders through it was determined by the height to which the lower sash could be raised. If this sash could have been pushed up the whole distance of 38 inches, this opening would have been 29 inches high, as the window frame was but 67 inches in height. But the sash could not be raised 38 inches. This appears from the carpenter's testimony. He stated: "The lower window does not push up the whole distance of 38 inches. That is one of the reasons I mentioned I use my hands to hold the screen. The screen must be raised approximately 30 inches before it can be taken out of its frame. If a man raised it high enough to stick his head and shoulders out underneath the screen, that wouldn't dislodge it." The height of the opening was, therefore, less than 29 inches. Seeking to raise the screen any higher would not increase the height of the opening, and if the screen was raised no higher than the top of the opening, it could

not become disengaged from the guides and fall or be forced out.

The burden was on the plaintiff to show how the screen came to fall. He sought to do so by Ballard. He claimed he was pushing the screen upward by the handles when it slipped out of his hands and fell. The following is from his cross-examination:

"Q. When you pushed the screen upward, you let go of the handles before it got all of the way up, didn't you? A. No, I didn't. The window fell, fell outward.

"Q. It didn't fall from your hands, did it? A. These grooves, it just fell forward from my hands, from my fingers *that I had in these handles that you lift them up with*, it just fell forward (indicating), naturally I had nothing to—

"Q. You still had hold of it? A. I did until the window fell.

"Q. You still had your hands on it when it went outward? A. Yes, sir."

The testimony of the hotel carpenter, who attended to the placing and the removing of this screen, and all screens about the hotel, and had done so for twenty years, is fully confirmed by the physical facts and conditions. It conclusively shows that the screen could not have fallen in the manner and under the conditions testified to by Ballard. While the evidence and justifiable inferences favorable to plaintiff must be accepted at their face value in determining whether he made a case submissible to the jury, the evidence must be believable evidence, as stated by the Missouri Court of Appeals in Murphy v. Quick Tire Service, Mo. App., 47 S. W. 2d 202. Evidence which is inconsistent and irreconcilable with the undisputed physical facts is of no weight. Young v. Clark, 227 Iowa 480, 285 N. W. 633.

We must gauge the acts of the defendants by the reasonably prudent person rule. Borland v. Lenz, 196 Iowa 1148, 194 N. W. 215.

It is our judgment the occurrence of an injury from the falling of the screen was not reasonably to be anticipated. As testified to by one witness, "It couldn't be done by ordinary handling of it. * * * The screen was absolutely safe. * * * The

screens have been fastened in the same way for 20 years, and the method of fastening has never been changed. The same [kind of] screens are used now as were used 20 years ago.'' So far as shown by the record but one screen had ever fallen before, and the cause of its falling is not shown. No claim is made that the screen or guides were not in repair.

If the operator of a hotel should be held bound to expect a hotel guest to dislodge a screen attached and operated as this one was, then he would also be required to normally anticipate and expect that a guest might place a vase of flowers, a pitcher of ice water, a bottle, or a glass upon the sill of an open window in his room, and then carelessly cause it to fall to the sidewalk below. A well considered case, Wolk v. Pittsburgh Hotels Co., 284 Pa. 545, 131 A. 537, 42 A. L. R. 1081, holds to the contrary. We have read Crow v. Colson, 123 Kan. 702, 256 P. 971, 53 A. L. R. 457; Dye-Washburn Hotel Co. v. Aldridge, 207 Ala. 471, 93 So. 512; McCarthy v. Thompson Square Theater, 254 Mass. 373, 150 N. E. 170, 42 A. L. R. 1109; Thompson v. Commercial Nat. Bank, 156 La. 479, 100 So. 688, and other cases cited by appellant, besides many others, and none of them justify a reversal of the ruling and judgment of the able trial court. The general principle which is controlling in this case is well stated by the Massachusetts court in Falk v. Finkelman, 268 Mass. 524, 527, 168 N. E. 89, 90, in this plain, simple language: ''One is bound to anticipate and provide against what usually happens and what is likely to happen, but is not bound in like manner to guard against what is unusual and unlikely to happen, or what, as is sometimes said, is only remotely and slightly probable.''

The appellant failed to establish any ground of negligence alleged. Further discussion of other matters raised by either side is, therefore, unnecessary. The judgment is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.