**E. J. LAKATOSH, Appellant,**

**v.**

**DIAMOND ALKALI COMPANY, a Delaware corporation, and Transamerican Freight Lines, Inc., a Delaware corporation, Appellees.**

**No. 55710.**

Supreme Court of Iowa.

July 3, 1973.

Klauer, Stapleton, Ernst & Sprengelmeyer, Dubuque, for appellant.

O'Connor, Thomas, Wright, Hammer & Bertsch, Dubuque, for appellee, Diamond Alkali Co.

Herrick, Langdon, Belin & Harris, Des Moines, for appellee, Transamerican Freight Lines, Inc.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP and McCORMICK, JJ.

LeGRAND, Justice.

The issue in this case is whether plaintiff was entitled to warning from defendants concerning possible permanent contamination of his trailer from a cargo of 2-4-D weed killer which he hauled from Newark, New Jersey, to Chicago. The trial court ruled as a matter of law that he was not. We affirm as to defendant Transamerican Freight Lines, Inc. and reverse as to defendant Diamond Alkali Company.

Plaintiff owned a 35-foot trailer which he regularly used to transport fresh meat from Dubuque to New York City under a lease arrangement with Rowley Interstate Transportation Co., Inc. After delivering the meat in New York, it was plaintiff's practice to obtain whatever cargo was available for his return trip to Iowa rather than to deadhead back. These arrangements were frequently made through Transamerican Freight Lines, Inc. (hereafter called Transamerican).

On the trip in question, plaintiff, as usual, checked with Transamerican after delivering his load of meat and was told to pick up a shipment of chemicals at Diamond Alkali Company (hereafter called Diamond) in Newark, New Jersey. As it turned out, this consisted of 30,600 pounds of weed killer packed in 50-pound sacks, which plaintiff transported to its Chicago destination. He then returned to Dubuque and had his trailer steam cleaned, which was standard practice at both ends of his run. Usually this properly prepared the equipment for its next meat cargo. However, on this occasion, it did not eliminate the 2-4-D odor. Neither did additional cleansings, even though various detergents and solutions were used in an effort to rid the trailer of the offensive smell. When plaintiff took his next load of meat east, it was contaminated from the odor within the trailer and was later destroyed as unfit to eat.

Ultimately, plaintiff was compelled to dispose of his trailer. He sold it for $600.00 and bought a new one. He claims damages from both defendants in the amount of $8,657.20. He also asks exemplary damages in the amount of $3,000.00 for defendants' "willful, careless and wanton disregard" of his property.

The case was tried without a jury. At the conclusion of plaintiff's evidence, both defendants made motions to dismiss on numerous grounds, most of which dealt in one way or another with plaintiff's alleged failure to show negligence on the part of either defendant. These motions, which are counterparts of motions for a directed verdict in jury cases, were taken under advisement. Later the motions were sustained as to each defendant. In its ruling, the trial court made detailed findings of fact and stated conclusions of law arising therefrom. Some question remained whether the trial court intended this to be a determination of disputed fact questions or a ruling on the motions to dismiss. We are persuaded it was the latter and that the trial court decided no notice or warning was required as a matter of law.

The single issue presented for determination is whether defendants should have given plaintiff warning that his trailer might be contaminated from hauling the 2-4-D weed killer. Plaintiff's theory is

that he was entitled to notice "of the nature and properties of the chemical 2–4–D" and of the "danger of contamination to his trailer from the chemical."

It should be noted at the outset that 2–4–D has certain characteristics dangerous to persons who come in contact with it. A warning to this effect was printed on each bag. We are not now concerned either with those dangers or the sufficiency of that warning. We consider only the defendants' obligation under the circumstances to warn plaintiff that the weed killer posed a danger of contamination of his trailer.

The trial court held as a matter of law, first, that defendants were not obliged to give any such warning; and, second, if notice was necessary, the warning given on each bag was sufficient.

■ A duty to warn depends on superior knowledge and is said to exist when one may reasonably foresee danger of injury or damage to one less knowledgeable unless adequate warning of danger is given. It is this reasonable foreseeability which triggers the obligation to warn, which must be determined by the circumstances of each case. Tampa Drug Company v. Wait (Fla.1958), 103 So.2d 603, 608, 609; Haberly v. Reardon Company (Mo.1958), 319 S.W.2d 859, 864; 2 Harper and James, The Law of Torts, sec. 28.7, page 1547 (1956); cf. sec. 28.5, page 1542; 65 C.J.S. Negligence § 89, page 1029 (1966); 57 Am.Jur.2d, Negligence, sec. 125, page 475 (1971).

For a general discussion of reasonable foreseeability as an element of negligence, see Calkins v. Sandven, 256 Iowa 682, 129 N.W.2d 1 (1964); Davis v. The Coats Co., 255 Iowa 13, 19, 119 N.W.2d 198, 202 (1963); and Kapphahn v. Martin Hotel Co., 230 Iowa 739, 747, 298 N.W. 901, 906 (1941).

■ Whether notice or warning should have been given under particular circumstances, like most questions bearing on negligence, is ordinarily for the jury. It is only in exceptional cases that it may be determined as a matter of law. Rule 344(f)(10), Rules of Civil Procedure; Dobson v. Jewell, 189 N.W.2d 547, 556. (Iowa 1971). In considering whether a particular controversy falls within the "exceptional case" category the evidence must be viewed most favorably for the party against whom a motion to direct a verdict (or motion to dismiss) is made. Rule 344(f)(2), R.C.P.; Nelson v. Iowa-Illinois Gas and Electric Co., 160 N.W.2d 448, 449 (Iowa 1968).

Applying these rules to the case at hand, we hold the trial court properly sustained the motion to dismiss as to defendant Transamerican, but that the ruling in favor of defendant Diamond was error. We discuss the circumstances as they affect each defendant separately.

I. As to Transamerican, plaintiff completely failed to show any duty to warn. The evidence discloses Transamerican had from time to time obtained return cargoes for plaintiff. It assumed no responsibility for the type of freight to be hauled and there is no testimony that it was expected to do so.

Under the record before us, Transamerican simply undertook to bring together a shipper with a cargo and a trucker with an empty trailer. From then on any agreement reached was between them. Here Transamerican advised plaintiff it had found a return load of "chemicals." Neither plaintiff nor Transamerican knew what kind. Plaintiff went to the designated place and accepted the freight offered for shipment.

■ We find no duty upon Transamerican to make an investigation of the nature of the chemicals so that it could warn plaintiff whether they were suitable for carriage.

We hold the trial court was right in sustaining Transamerican's motion to dismiss.

II. However, we reach a different conclusion with respect to defendant Diamond, and we hold trial court erred in deciding as a matter of law that this defendant had no duty to warn plaintiff of potential danger.

The trial court found plaintiff had as much knowledge about the dangers of 2–4–D as did defendant Diamond. It was on this premise it was held there was no duty to warn. We recite briefly the evidence which leads us to our conclusion this was error.

Diamond was the manufacturer of this product and, as such, was familiar with its ingredients, characteristics and purposes. Plaintiff, on the other hand, was ignorant of any technical knowledge of 2–4–D. We may assume he knew, as do people generally, that weed killer is dangerous if not handled properly; that repeated contact with the skin or prolonged breathing of the fumes is to be avoided. Plaintiff also testified that while the trailer was being loaded (and this was relied upon heavily by the trial court) there was a strong "iodine" odor and sufficient dust in the air that breathing was difficult. The workmen wore masks to keep from inhaling too much of the harmful material.

■ However, we cannot conclude from this, as the trial court did, plaintiff should have known the product would contaminate his truck. He may have been warned by these circumstances, and by the printed warning on the individual bags, that there was danger to his person unless the weed killer was handled carefully and according to instructions. There is no evidence which warned him his *trailer* might be permanently damaged.

The record shows plaintiff had previously carried malodorous commodities like lime and fertilizer without untoward results. A thorough cleaning had always previously put the equipment back in usable condition for its main purpose—hauling meat. Nothing in this record justifies the finding as a matter of law that plaintiff needed no warning because he should have anticipated the disaster from knowledge he then possessed.

The most important witness on this subject was Dr. Carl Osuch, a chemist who appeared as an expert witness for plaintiff. A fair review of his testimony clearly makes a jury question of the warning issue. He testified to certain chemical reactions of 2–4–D on inert objects from both absorption and adsorption which would make the removal of offensive odors and residual effects of the product extremely difficult. We believe the doctor's testimony would justify a jury in finding warning should have been given. We mention, although we consider only testimony favorable to plaintiff in deciding the issue, Dr. Osuch also testified the damage may have resulted from the condition of the trailer itself rather than the properties of 2–4–D. This merely points up the fact that the matter should not have been disposed of on motion to dismiss.

■ Under this record, whether Diamond could have reasonably foreseen the probability of damage and should have, therefore, warned plaintiff was a question of fact. It should not have been decided as a matter of law.

■ We have discussed this matter under the general rules of negligence concerning a duty to warn. The relationship of shipper and carrier existing here does not alter those principles. Plaintiff had a duty to furnish facilities suitable to carry out the contract he assumed and Diamond was obligated to warn plaintiff of any reasonably foreseeable danger from the property to be transported. 13 C.J.S. Carriers § 49, page 95; § 528, page 1033 (1939). What we have said covers the rights and duties of the parties on the record before us.

We briefly mention one other matter. The trial court also held the printed warning on each 50-pound sack was sufficient,

if one was required at all. We are again obliged to disagree. This dealt solely with how the material should be handled to avoid ill effects to the person or to flowers, shrubs, and plants. Nothing there suggested damage might result to plaintiff's trailer.

We affirm the judgment as to defendant Transamerican.

We reverse and remand for a new trial as to defendant Diamond.

Affirmed in part, reversed in part and remanded.