**Robert H. BUFFINGTON, Appellant,**

**v.**

**AMCHEM PRODUCTS, INC., Appellee.**

**No. 73-1423.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1973.

Decided Jan. 16, 1974.

Dennis M. Gray, Council Bluffs, Iowa, for appellant.

Emmet Tinley, Council Bluffs, Iowa, for appellee.

Before GIBSON, LAY and HEANEY, Circuit Judges.

PER CURIAM.

Plaintiff, Robert H. Buffington, an Iowa farmer, recovered a verdict in the amount of $7,000 for injury to his 1969 corn crop following his use of a 2, 4–D post-emergent herbicide. The chemical was made by the defendant Amchem Products, Inc. The actual product Buffington used was Amchem Weedone LV–4 (described as a butoxy-Ethanol formulation 2, 4–D). After verdict the trial court sustained the defendant's motion for a judgment notwithstanding the verdict on the grounds that the evidence was insufficient to show that the defendant failed to provide an adequate warning as to the risks involved in the use of its product and second, that plaintiff lacked the jurisdictional amount to sue in a federal court. We reverse with directions to reinstate the verdict.

Plaintiff sprayed his crops in June of 1969 using a mixture of the Weedone LV–4 and water. The herbicide was dispensed by plaintiff's equipment at the rate of slightly less than one-half pint of 2, 4–D mixed with five gallons of water per acre. Shortly thereafter his corn began to show signs of damage with a large percentage of the plants either "breaking off" or being seriously damaged. Plaintiff's evidence establishes that the crop damage was the result of using defendant's 2, 4–D product. The trial court granted a judgment notwithstanding the verdict, reasoning that the defendant had no duty to warn the plaintiff that certain weather conditions when coupled with the use of 2, 4–D could cause severe damage, because the plaintiff had or should have had prior knowledge of this fact.

Defendant's position at trial was that plaintiff improperly applied the chemical. Defendant's witness testified that plaintiff had not followed the mixing instructions and had applied the herbicide using too little water.[1] The only mixing instruction the label gives is "Weedone LV–4 can be used in sprayers that apply 10 to 20 gallons per acre or sprayers that apply up to 200 gallons per acre."

Plaintiff maintains that he did not know that it was necessary to use a minimum of 10 to 20 gallons of water per acre; and further that he had always used a five gallon sprayer with other herbicides and had had no prior difficulty. Plaintiff acknowledges that he knew that application of 2, 4–D would temporarily produce fast growth of the corn, making it brittle so that if high winds occurred the corn plants might break off. He denied, however, that he knew that fluctuations in temperatures could cause stress or that use of the spray when coupled with certain other conditions conducive to favorable growth could cause *extensive* damage to his crop.

---

[1]. A research assistant for defendant, Dale Bush, testified that he felt the plaintiff had used an improper amount of water. He related:

In spraying liquids of the nature of Weedone LV4, all of our labels read 10 to 20 gallons per acre because we feel this quantity of water uniformly spread over a given area, you have to have a minimum of 10 gallons to uniformly wet a plant to any degree.

. . . . .

[T]he smaller the quantity of water you're trying to disperse, the smaller your droplets sizes you're breaking up and the wind will carry the spray over onto your neighbors, for example.

■ We are governed by Iowa law. We find the evidence sufficient to establish that the defendant owed a duty to warn the plaintiff that (a) the mixture of this particular 2, 4–D product should be used with a minimum amount of water and (b) that after use of the herbicide if certain favorable growing conditions were present *extensive* damage could occur to a corn crop.

We further hold that the jury could find from the overall facts and circumstances that the plaintiff did not have sufficient prior knowledge as to the required usage of the product, as well as knowledge that extensive damage to his crop might follow under certain growing conditions.

■ Under Iowa law, a manufacturer who undertakes to produce and sell to the general public a product whose use could possibly result in harm must provide sufficient instruction and give adequate warning. The instructions should give reasonable notice and *specific* direction as to proper use and all attendant risks which are foreseeable to a manufacturer who possesses superior knowledge so that the ordinary user may be fully informed. Lakatosh v. Diamond Alkali Co., 208 N.W.2d 910 (Iowa 1973); West v. Broderick & Bascom Rope Co., 197 N.W.2d 202 (Iowa 1972). *See also* Comment, The Manufacturer's Duty to Warn of Dangers Involved in Use of a Product, 1967 Wash.U.L.Q. 206.

In Lakatosh v. Diamond Alkali Co., 208 N.W.2d 910 (Iowa 1973), decided after the district court's granting of the judgment notwithstanding the verdict, the Iowa Supreme Court offered the following comments on a supplier's duty to warn:

> A duty to warn depends on superior knowledge and is said to exist when one may reasonably foresee danger of injury or damage to one less knowledgeable unless adequate warning of danger is given. It is this reasonable foreseeability which triggers the obligation to warn, which must be deter-

mined by the circumstances of each case.

. . . . .

Whether notice or warning should have been given under particular circumstances, like most questions bearing on negligence, is ordinarily for the jury. It is only in exceptional cases that it may be determined as a matter of law.

*Id.* 208 N.W.2d at 913.

In *Lakatosh* the plaintiff, a truck driver, used his truck to haul a 2, 4–D weed killer manufactured by the Diamond Alkali Co. His truck was primarily used for transporting meat shipments. As a result of hauling the 2, 4–D plaintiff's truck became permanently contaminated and could no longer be used for meat shipments. Plaintiff brought suit for damages, basing his case on the theory that the defendant should have warned him of the possibility that his trailer could become contaminated if used to haul 2, 4–D. The trial court held as a matter of law that defendant was not obliged to give any warning but in any event the notice on the bag was sufficient. In reversing the trial court the Supreme Court of Iowa observed:

> Nothing in this record justifies the finding as a matter of law that plaintiff needed no warning because he should have anticipated the disaster from knowledge he then possessed.

> The most important witness on this subject was Dr. Carl Osuch, a chemist who appeared as an expert witness for plaintiff. A fair review of his testimony clearly makes a jury question of the warning issue. He testified to certain chemical reactions of 2–4–D on inert objects from both absorption and adsorption which would make the removal of offensive odors and residual effects of the product extremely difficult. We believe the doctor's testimony would justify a jury in finding warning should have been given.

*Lakatosh, supra* at 914.

In West v. Broderick & Bascom Rope Co., 197 N.W.2d 202 (Iowa 1972), the

plaintiff was an ironworker, who sued for personal injuries when a wire sling broke while it was being used to move tire presses. The argument was made that ironworkers were experts in the use of wire ropes and thus did not need a warning as to the capacity of the wire. The Iowa court ruled:

> The rule in this jurisdiction is that in determining whether a fact issue is engendered, the evidence is viewed in its most favorable light to the party having the burden of proof, and that if reasonable minds would differ on the issue, it must be left to the trier of the facts. While Broderick & Bascom makes a persuasive argument, we think its argument is for the jury. We are not persuaded we should hold as a matter of law that no duty to warn existed because of the ironworkers' expertise. Eck v. E. I. du Pont de Nemours & Co., 393 F.2d 197 (7th Cir.); McKay v. Upson-Walton Co., 317 F.2d 826 (7th Cir.) (Swygert, J., concurring); Rhoads v. Service Machine Co., 329 F.Supp. 367 (E.D. Ark.); Bean v. Ross Mfg. Co., 344 S. W.2d 18, 24 (Mo.) ("We decline to hold, as a matter of law, that defendant owed him no further duty to warn merely because he was a licensed plumber."); see Note, 1968 Wis.L. Rev. 228, 236.

*Id.* at 211.

On the basis of the Iowa law discussed and the evidence in this case, we do not think that this is such an exceptional case that it may be determined as a matter of law. Whether the notice or warning should have been given under the governing circumstances was, we think, a question for the jury. We find the trial court erred in granting the judgment notwithstanding the verdict.

## JURISDICTION

The trial judge alternatively found that the defendant was entitled to a judgment notwithstanding the verdict because the plaintiff's claim did not meet the requisite jurisdictional amount required by 28 U.S.C. § 1332. On this basis the court also assessed all costs to the plaintiff. We disagree. It is well established that the damage prayed for by the plaintiff controls the jurisdictional claim if the claim is made in good faith. In order to dismiss the plaintiff's claim for failure to meet the jurisdictional amount it must appear to a *legal certainty* that the claim will not meet the necessary amount. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U. S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Sanders v. Hiser, 479 F.2d 71 (8th Cir. 1973); Euge v. Trantina, 422 F.2d 1070 (8th Cir. 1970); 1 J. Moore, Federal Practice ¶ 0.92[1], at 832–833 (2d ed. 1972).[2]

 In the present case plaintiff's complaint alleged he suffered damage in the amount of $11,112.50.[3] At the trial the plaintiff was the only witness who testified or offered any evidence concerning damages. He arrived at his estimated loss by consulting his county extension agent on how much corn the

---

2. As the Supreme Court early noted in Barry v. Edmunds, 116 U.S. 550, 559, 6 S.Ct. 501, 506, 29 L.Ed. 729 (1886):

 It might happen that the judge, on the trial or hearing of a cause, would receive impressions amounting to a moral certainty that it does not really and substantially involve a dispute or controversy within the jurisdiction of the court. But upon such a personal conviction, however strong, he would not be at liberty to act, unless the facts on which the persuasion is based, when made distinctly to appear on the record, create a legal certainty of the conclusion based on them.

3. The plaintiff testified but for the damage he would have harvested 125 bushels of # 2 corn per acre valued at $1.10 per bushel. There were 175 acres. This comes to 21,875 bushels worth $24,062.50. For 1969 plaintiff's land produced only 12,950 bushels of inferior corn valued at $1.00 per bushel, thus worth $12,950.00. The cost in raising and harvesting the crop remained the same. Therefore plaintiff figured his damage by subtracting $12,950.00 from $24,062.50 arriving at the figure of $11,112.50. This method of ascertaining damages for injury to a growing crop is the recognized method of doing so. Martin v. Jaekel, 188 N.W.2d 331, 336 (Iowa 1972).

average acre in his township yielded in 1969, what quality it was and its estimated worth.

It is immaterial that the jury eventually awarded the plaintiff only $7,000. What is important is that the assertions as to the losses the plaintiff suffered were made in good faith at the time his complaint was filed.

Judgment reversed and remanded to reinstate the verdict and enter judgment for plaintiff for the verdict including costs and interest.