The judgment of the bankruptcy court is AFFIRMED.

**Robert L. PETTY, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**Robert L. PETTY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 81–1830, 81–1894.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1981.

Decided May 19, 1982.

---

Stuart E. Schiffer, Acting Asst. Atty. Gen., J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., James H. Reynolds, U. S. Atty., Cedar Rapids, Iowa, Laura D. Millman, Jeffrey Axelrad (argued), Attys., Dept. of Justice, Washington, D. C., for U. S.

Wiley Mayne, John D. Mayne, Sioux City, Iowa, for Petty.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

The United States appeals from an adverse judgment determining that it breached its duty under the Swine Flu Act to warn Robert L. Petty of the risks of receiving a flu vaccination during the National Swine Flu Immunization Program (the Program). The district court concluded that the swine flu vaccine caused Robert Petty's serum sickness, and awarded him $212,-807.22 in damages.

Robert Petty cross appeals, alleging that the district court should have held the United States liable on multiple theories, not just negligence.[1]

Because we believe the district court applied an incorrect standard in evaluating the adequacy of warnings given to Petty, we vacate the order of the district court, and remand this case for reconsideration in light of our opinion.

## I. *Background.*

In 1976, Robert L. Petty lived in Sioux City, Iowa, where he worked as an electrician. Petty, who was then age thirty-three, learned through the media of the Swine Flu Immunization Program instituted pursuant to the National Swine Flu Immunization Program Act, 42 U.S.C. § 247b(j)–247b(*l*) (1976) (the Act), which President Ford had signed into law in an effort to prevent a national epidemic of influenza. On October 31, 1976, Robert Petty and his wife went to a vaccination center operated by the Sioux City-Woodbury County Health Department under the direction of the Iowa State Health Department.

Before his inoculation, Petty received an information form,[2] which stated:

### IMPORTANT INFORMATION

### ABOUT SWINE INFLUENZA (FLU) VACCINE

### (MONOVALENT)

#### July 15, 1976

The Disease

Influenza (flu) is caused by viruses. When people get flu they may have fever, chills, headache, dry cough or muscle aches. Illness may last several days or a week or more, and complete recovery is usual. However, complications may lead to pneumonia or death in some people. For the elderly and people with diabetes or heart, lung, or kidney diseases, flu may be especially serious.

It is unlikely that you have adequate natural protection against swine flu, since it has not caused widespread human outbreaks in 45 years.

The Vaccine

The vaccine will not give you flu because it is made from killed viruses. Today's flu vaccines cause fewer side effects than those used in the past. In contrast with some other vaccines, flu vaccine can be taken safely during pregnancy.

One shot will protect most people from swine flu during the next flu season; however, either a second shot or a different dosage may be required for persons under age 25. If you are under 25 and a notice regarding such information is not attached, this information will be provided to you wherever you receive the vaccine.

Possible Vaccine Side Effects

Most people will have no side effects from the vaccine. However, tenderness at the site of the shot may occur and last

---

1. Petty contends that the district court should have also imposed liability for (1) the negligence of the United States under the FTCA; (2) the negligence of program participants under 42 U.S.C. § 247b(k)(2); and (3) for strict products liability of program participants under 42 U.S.C. § 247b(k)(2). We consider the cross-appeal improper and unnecessary, inasmuch as it presents only alternative grounds for affirmance, which the appellee may assert without a cross-appeal.

2. As part of the establishment of the national immunization program, the Swine Flu Act provided for
 [t]he development, in consultation with the National Commission for the Protection of Human Subjects of Biomedical and Behavioral Research, and implementation of a written informed consent form and procedures for assuring that the risks and benefits from the swine flu vaccine are fully explained to each individual to whom such vaccine is to be administered. Such consultation shall be completed within two weeks after the enactment of this Act, or by September 1, 1976, whichever is sooner. Such procedures shall include the information necessary to advi[s]e individuals with respect to their rights and remedies arising out of the administration of such vaccine. [42 U.S.C. § 247b(j)(1)(F) (1976)]

for several days. Some people will also have fever, chills, headache, or muscle aches within the first 48 hours.

Special Precautions

As with any vaccine or drug, the possibility of severe or potentially fatal reactions exists. However, flu vaccine has rarely been associated with severe or fatal reactions. In some instances people receiving vaccine have had allergic reactions. You should note very carefully the following precautions:

* Children under a certain age should not routinely receive flu vaccine. Please ask about age limitations if this information is not attached.

* People with known allergy to eggs should receive the vaccine only under special medical supervision.

* People with fever should delay getting vaccinated until the fever is gone.

* People who have received another type of vaccine in the past 14 days should consult a physician before taking the flu vaccine.

*If you have any questions about flu or flu vaccine, please ask.*

After "skimming" the document, Petty signed the attached Registration Form, by which he averred:

### REGISTRATION FORM

I have read the above statement about swine flu, the vaccine, and the special precautions. I have had an opportunity to ask questions, including questions regarding vaccination recommendations for persons under age 25, and understand the benefits and risks of flu vaccination. I request that it be given to me or to the person named below of whom I am the parent or guardian.

He then received a shot, administered to his left arm with a jet gun.

For the next eight days, Petty felt fine and continued to work normally. At work on November 8, 1976, however, he began to experience numbness in his left great toe, which then spread up through his left leg and down through his right leg. He soon developed tingling and aching in his mus-cles and joints, forcing him to quit work for the day.

Petty's condition became progressively worse. The next day, his family physician prescribed some medication over the telephone. The medication apparently had no effect, and Petty developed a sore throat, weakness in his arms and muscles, swelling in his feet, and aching joints. Petty's balance and muscle control deteriorated, he experienced chest pains, and his breathing became increasingly difficult. On November 12, Petty was admitted to the hospital where he received oxygen, blood transfusions, and intravenous feedings.

Petty's condition continued to deteriorate and his chest pain grew more severe. Although he had no history of heart trouble, specialists determined that Petty suffered from congestive heart failure. On November 26, his physicians changed his medication to steroids (Cortisone), which relieved his chest pain and the swelling in his knees and feet. His breathing improved, and he began to walk again. By the time Petty left the hospital on December 8, he had lost more than fifty pounds.

Petty did not return to work until March 30, 1977. At that time, he could not perform all of his prior functions due to lack of strength and continued aching in his joints. Since then, however, Petty has recovered about seventy-five percent of his prior effectiveness.

Petty subsequently instituted this suit under the Swine Flu Act, in the United States District Court for the Northern District of Iowa, charging the United States with product liability, negligent administration of the program, and misrepresentation of the risks and benefits of receiving the vaccine.

In February 1978, the Judicial Panel on Multidistrict Litigation transferred Petty's action to the United States District Court for the District of Columbia for coordinated pretrial procedures with other personal injury and wrongful death claims under the Swine Flu Act. *See In Re Swine Flu Immunization Products Liability Litigation,*

MDL #330, Misc. No. 78–0040 (1979) (Multidistrict Litigation). Petty's case was subsequently tried before the United States District Court for the Northern District of Iowa.

In an unpublished opinion, the district court held the United States liable for its negligent failure to provide a "full, adequate and understandable warning" of the risks and benefits associated with the swine flu vaccine. The court also concluded that the Registration Form Petty signed did not provide sufficient information about rights and remedies under the Act, and that the Government had therefore failed to obtain informed consent as required by the Act. After determining that the swine flu vaccination caused Robert Petty's serum sickness, the district court awarded Petty $212,807.22 in damages.

## II. *Discussion.*

### A. *The National Swine Flu Immunization Program Act.*

■ Early in 1976, an outbreak of influenza among servicemen at Fort Dix, New Jersey, raised concern about a national influenza epidemic, based on the similarity between the newly discovered strain of influenza and the strain that had caused the 1918–19 pandemic. Despite disagreement among experts as to the likelihood of an epidemic, or the virulence of the newly discovered influenza strain, the federal government decided to institute a program to inoculate the entire adult population against the "swine flu." [3] On August 12, 1976, President Ford signed into law the National Swine Flu Immunization Program Act, 42 U.S.C. § 247b(j)–247b(*l*) (1976).

■ In order to secure participation of the manufacturers and distributors of the vaccine, and the cooperation of public and private agencies to administer the vaccine, the Act provided for the assertion of all personal injury or wrongful death claims directly against the United States. 42 U.S.C. § 247b(k)(1)(B). The Act directed claimants to follow the procedures for the Federal Tort Claims Act (the FTCA),[4] and specified that

**3.** In the Multidistrict Litigation, Judge Gesell ruled that the decision to establish a National Swine Flu Immunization Program was a discretionary act, and therefore covered by the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a). As a result, that decision may not be a predicate for liability in suits brought under the Swine Flu Act. *See In Re Swine Flu Immunization Products Liability Litigation,* MDL #330, Misc. No. 78–0040 at 2 (1979) (final pretrial order).

**4.** Section 247b(k)(1)(B) of the Swine Flu Act provides:

(B) To—

(i) assure an orderly procedure for the prompt and equitable handling of any claim for personal injury or death arising out of the administration of such vaccine; and

(ii) achieve the participation in the swine flu program of (I) the manufacturers and distributors of the swine flu vaccine; (II) public and private agencies or organizations that provide inoculations without charge for such vaccine or its administration and in compliance with the informed consent form and procedures requirements prescribed pursuant to subparagraph (F) of paragraph (1) of this subsection, and (III) medical and other health personnel who provide or assist in providing inoculations without charge for such vaccine or its administration and in

compliance with such informed consent form and procedures requirements.

It is the purpose of this subsection to establish a procedure under which all such claims will be asserted directly against the United States under section 1346(b) of title 28, and chapter 171 of such title (relating to tort claims procedure) except as otherwise specifically provided in this subsection.

Section 1346(b) of title 28, referred to above, provides:

§ 1346. United States as defendant

(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Chapter 171 of Title 28 contains "Tort Claim Procedures." 28 U.S.C. §§ 2671–2680 (1976).

[t]he United States shall be liable with respect to claims submitted after September 30, 1976 for personal injury or death arising out of the administration of swine flu vaccine under the swine flu program and based upon the act or omission of a program participant in the same manner and to the same extent as the United States would be liable in any other action brought against it under such section 1346(b) and chapter 171, except that—

(i) the liability of the United States arising out of the act or omission of a program participant may be based on any theory of liability that would govern an action against such program participant under the law of the place where the act or omission occurred, including negligence, strict liability in tort, and breach of warranty;

(ii) the exceptions specified in section 2680(a) of title 28, shall not apply in an action based upon the act or omission of a program participant; and

(iii) notwithstanding section 2401(b) of title 28, if a civil action or proceeding for personal injury or death arising out of the administration of swine flu vaccine under the swine flu program is brought within two years of the date of the administration of such vaccine and is dismissed because the plaintiff in such action or proceeding did not file an administrative claim with respect to such injury or death as required by such chapter 171, the plaintiff in such action or proceeding shall have 30 days from the date of such dismissal or two years from the date the claim arose, whichever is later, in which to file such administrative claim.

Section 247b(k)(2)(A) of the Act imposes liability on the United States for personal injury or death arising out of the administration of the Swine Flu Immunization Program to the same extent as the liability imposed by the FTCA. The FTCA makes the United States liable only for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b) (1976). The Swine Flu Act, however, also makes the United States liable for the act or omission of a program participant,[5] such as the Sioux City-Woodbury County Health Department.[6]

---

5. Section 247b(k)(2)(B) of the Swine Flu Act defines the term "program participant" as follows:

(B) For purposes of this subsection, the term "program participant" as to any particular claim means the manufacturer or distributor of the swine flu vaccine used in an inoculation under the swine flu program, the public or private agency or organization that provided an inoculation under the swine flu program without charge for such vaccine or its administration and in compliance with the informed consent form and procedures requirements prescribed pursuant to subparagraph (F) of paragraph (1) of this subsection, and the medical and other health personnel who provided or assisted in providing an inoculation under the swine flu program without charge for such vaccine or its administration and in compliance with such informed consent form and procedures requirements. [42 U.S.C. § 247b(k)(2)(B) (1976).]

6. We note a certain ambiguity in the language of section 247b(k)(2)(A) which makes the United States liable

with respect to claims submitted after September 30, 1976 for personal injury or death arising out of the administration of swine flu vaccine under the swine flu program *and*

*based upon the act or omission of a program participant* in the same manner and to the same extent as the United States would be liable in any other action brought against it under such section 1346(b) and chapter 171 * * *. [42 U.S.C. § 247b(k)(2)(A) (1976) (emphasis added).]

The emphasized language indicates an additional and distinct ground on which the United States may be held liable. It does not, however, *add* a condition of liability under the FTCA.

The final pretrial order in the Multidistrict Litigation stated:

The United States is the only defendant contemplated under the Swine Flu Act.

\* \* \* \* \* \*

The Court has ruled that the United States is not itself a "program participant" even where it performed functions similar or identical to those performed by a "program participant." However, *in addition to the liability of the United States under certain circumstances for its own acts or omissions, it also* may be liable for the acts or omissions of program participants. That is, under the Swine Flu Act the United States is a substitute defendant for program participants and is therefore liable to the same extent that a

■ The FTCA does not contain its own substantive standard of care against which to measure the conduct of government employees, but instead directs that liability should be determined according to "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1976). Because the Swine Flu Act incorporates by reference the liability provisions of the FTCA, state law standards also apply to claims brought under the Swine Flu Act.

■ The FTCA does not make the United States liable on theories of strict or absolute liability. *See Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). Although the Swine Flu Act does not enlarge the liability of the United

States for its own acts or omissions beyond that provided for in the FTCA, it creates a derivative liability for the acts or omissions of a program participant based on *any* theory (including negligence, strict liability in tort, or breach of warranty) applicable under state law. 42 U.S.C. § 247b(k)(2)(A)(i) (1976).

The provisions of section 247b(k)(2)(A) constitute the exclusive remedy under the Act, 42 U.S.C. § 247b(k)(3).

## B. *Liability Under the Swine Flu Act.*

Many of the claims under the Swine Flu Act that were consolidated in the Multidistrict Litigation for pretrial procedures have now been tried.[7] No reported decision by a

---

program participant would have been liable under the law of the state or locality where the act or omission occurred. * * * The Court further held on November 8, 1979, in clarification of the above, that nothing in the Swine Flu Act itself bars a plaintiff from demonstrating that in a given situation a program participant *as well as the United States* had a duty to warn potential vaccinees. [*In Re Swine Flu Immunization Products Liability Litigation, supra* at 2 (final pretrial order) (emphasis added).]

Liability of the United States under section 247b(k)(2)(A) thus does not necessarily depend on the act or omission of a program participant. This provision does indicate, however, that the United States shall *also* be liable "based upon the act or omission of a program participant in the same manner and to the *same extent*" as under the FTCA, even though that act or omission would not otherwise constitute a predicate for liability under the FTCA.

7. *See Unthank v. United States*, 533 F.Supp. 703 (D.Utah 1981) (United States liable for transverse myelitis proximately caused by swine flu vaccine); *Montoya v. United States*, 533 F.Supp. 586 (D.Colo.1981) (no liability because no causal connection established between swine flu vaccine and amyotrophic lateral sclerosis); *Bean v. United States*, 533 F.Supp. 567 (D. Colo.1980) (no liability because no causal connection established between swine flu vaccine and drop foot); *Simonetti v. United States*, 533 F.Supp. 435 (E.D.N.Y.1982) (complaint dismissed because no causal connection established between swine flu vaccine and neurological symptoms); *Marneef v. United States*, 533 F.Supp. 129 (E.D.Mich.1981) (no liability because no causal connection established between swine flu vaccine and toxic neuropathy); *Tabaczynski v. United States*, 529 F.Supp. 156 (E.D.Mich.1981) (complaint dismissed because no causal connection established between swine

flu vaccine and polymyositis); *O'Mara v. United States*, No. 78–265–TUC–MAR (D.Ariz. Nov. 20, 1981) (action dismissed for lack of prosecution); *Widdell v. United States*, No. 79–4226 (D.Kan. Nov. 19, 1981) (complaint dismissed because no causal connection established between swine flu vaccine and cold urticaria); *Sparkes v. United States*, No. 80–F–955 (D. Colo. Nov. 17, 1981) (action dismissed because no causal connection established between swine flu vaccine and plaintiff's injury); *Herndon v. United States*, No. 80–195–A (E.D.Va. Oct. 30, 1981) (action dismissed because no causal connection established between swine flu vaccine and chronic inflammatory polyradiculoneuropathy); *MacEwen v. United States*, 525 F. Supp. 1063 (M.D.Ala.1981) (no liability because no causal connection established between swine flu vaccine and sensory polyneuropathy); *Stone v. United States*, CV–F–78– 140 MDC (E.D.Cal. Oct. 14, 1981) (no liability because plaintiff's injury caused by stroke, not swine flu vaccine); *Adleson v. United States*, 523 F.Supp. 459 (N.D.Cal.1981) (no liability because no causal connection established between swine flu vaccine and chronic inflammatory polyradiculoneuropathy); *Daniels v. United States*, No. 78–X–0987–S (N.D.Ala. Sept. 21, 1981) (no liability for negligence because no duty to warn of neurological disorders associated with swine flu vaccine; warning adequate); *Hasler v. United States*, 517 F.Supp. 1262 (E.D. Mich.1981) (United States liable for plaintiff's rheumatoid arthritis because of inadequate warning of potential dangers of swine flu vaccine); *Elsworth v. United States*, No. 78–2553 (D.N.J. March 6, 1981) (no liability because plaintiff's idiosyncratic reaction to vaccine not reasonably foreseeable); *Gundy v. United States*, No. 79–F–587 (D.Colo. Sept. 4, 1980) (no liability because no causal connection established between swine flu vaccine and plaintiff's injury); *Cikins v. United States*, No.

federal court of appeals has yet considered claims of liability against the United States arising under the Swine Flu Act. These issues, therefore, present matters of first impression to this court.

The district court in this case held the United States liable for its negligence in failing to give Robert Petty adequate warning of the risks and benefits of receiving the swine flu vaccine. The court based its conclusion of liability on the Government's failure to comply with 42 U.S.C. § 247b(j)(1)(F), which provided for

> [t]he development, in consultation with the National Commission for the Protection of Human Subjects of Biomedical and Behavioral Research, and implementation of a written informed consent form and procedures for assuring that the risks and benefits from the swine flu vaccine are fully explained to each individual to whom such vaccine is to be administered. Such consultation shall be completed within two weeks after enactment of this Act, or by September 1, 1976, whichever is sooner. Such procedures shall include the information necessary to advi[s]e individuals with respect to their rights and remedies arising out of the administration of such vaccine. [Footnote omitted.]

We do not agree with the district court's pronouncement that "the Government's duty was explicitly set forth in section 247b(j)(1)(F) * * *," or that the language of this provision of the Act established "the statutory standard." *Petty v. United States*, 536 F.Supp. 860, 865 (N.D.Iowa 1981).

■ Section 247b(j)(1)(F) appears among the provisions outlining the establishment of the Program. It directs the Government to develop a written consent form as part of the Program, and to establish procedures for explaining the risks and benefits of the swine flu vaccine to all recipients. This section does not, however, specify statutory standards or establish a duty of care on the part of the Government or program partici-

pants. Rather, it is one of seven subsections introduced by the phrase, "The swine flu program *shall be limited* to the following: * * *." [Emphasis added.]

■ Indeed, the Swine Flu Act does not contain a particularized formulation of the duty imposed on the Government or program participants. As under the Federal Tort Claims Act, liability under the Swine Flu Act depends on the law of the place where the act or omission occurred. *See* 42 U.S.C. § 247b(k)(2)(A) (1976). Thus, when a vaccinee sues the United States for negligently carrying out one of its tasks under the Program by failing to provide adequate warning to potential vaccinees, state law supplies the applicable standard of care.

C. *Iowa Law.*

Robert Petty received his swine flu vaccination in Iowa, where he has resided during all the events at issue. On any theory of tort liability, therefore, Iowa law determines the Government's liability in this case.

In imposing liability on the United States, the district court held the United States negligent for failing to provide adequate warning of the risks and benefits of receiving the swine flu vaccine. The court did not, however, make its ruling of negligence in terms of Iowa law. Instead, the court determined the Government's negligence on the basis of the "federal standard" embodied in the Swine Flu Act, stating: "[T]here was no 'informed consent form' as required by 42 U.S.C. § 247b(j)(1)(F). The warning was inadequate and the drafters of the form acted negligently in light of the Congressional directives." *Petty v. United States, supra,* 536 F.Supp. at 865.

■ Although the district court's opinion set out the Iowa statute governing the contents of the consent form, Iowa Code § 147.137 (1979), the court made no clear findings of negligence under Iowa law. It did not, for example, show that the form used in the Program failed to meet the

78–328–A (E.D.Va. June 16, 1980) (no liability because no causal connection established be-

tween swine flu vaccine and optic neuritis).

requirements of the Iowa statute. In a posttrial order denying the Government's motion for a new trial or to amend judgment, the court asserted that it had considered section 147.137, but did not explain how the Government had violated the statute.[8] Instead, the court concluded that the Government breached its duty to warn, finding it negligent under both Iowa and federal law.

The Swine Flu Act (42 U.S.C. §§ 247b(j)–(1)) had both a broad directive * * * and the specific mention of the use of local law in § 247b(k)(2)(A). It is this Court's opinion that despite the directive to consider local law, the federal authorities cannot ignore the broad congressional directive to apprise vaccinees of "rights and remedies." [Petty v. United States, No. C 78 4083, slip op. at 5 n.2 (N.D.Iowa June 8, 1981) (posttrial order).]

Because we consider the district court's analysis of the Government's liability under Iowa law incomplete and inadequate to support the judgment, we vacate that judgment and remand this case for an express determination of the United States' liability under Iowa law, and an exposition of the basis therefor.

In doing so, we note that the district court ruled that the United States "had a duty to warn and inform potential vaccinees fully of the 'risks and benefits' of receiving the swine flu vaccine pursuant to the Swine Flu Act and the FTCA[,]" and

held the United States negligent "in failing to adequately warn plaintiff of the dangers involved in the swine flu vaccination." Petty v. United States, supra 536 F.Supp. at 869 (N.D.Iowa 1980).

 We believe these comments too broadly state the standard of care against which to evaluate Robert Petty's claim. In considering Petty's claim of negligence, the court must first determine whether the Government or the Sioux City-Woodbury County Health Department, as a program participant, had a duty under Iowa law to warn vaccinees of the risk of developing serum sickness. Under Iowa law, reasonable foreseeability of harm is the fundamental basis of the law of negligence. See Lakatosh v. Diamond Alkali Co., 208 N.W.2d 910 (Iowa 1973); Davis v. Coats Co., 255 Iowa 13, 119 N.W.2d 198 (1963); Kapphahn v. Martin Hotel Co., 230 Iowa 739, 298 N.W. 901 (1941). Therefore, before considering the adequacy of the warning, the district court must first consider whether the risk of developing serum sickness after receiving the swine flu vaccine was reasonably foreseeable. The district court's determination that the Government had an undifferentiated duty to warn of the risks and benefits of receiving the swine flu vaccine does not suffice to establish this element of liability.

 Based on the testimony of Dr. Clark Hyden, the district court made a find-

---

8. In support of its motion for a new trial or to amend judgment, the Government supplied the district court with a copy of the slip opinion in Elsworth v. United States, No. 78–2553 (D.N.J. March 4, 1981), which contained an analysis of the court's ruling in Petty.

The Elsworth court had criticized the approach in Petty on two grounds. First, the Elsworth court "disagree[d] with the Petty court's utilization of a federal statutory standard of negligence rather than state court law's standards of negligence." Elsworth v. United States, supra, slip op. at 5–6. Secondly, the Elsworth court criticized Petty for failing to evaluate the adequacy of the warning given to swine flu vaccinees in relation to the particular ailment suffered by Robert Petty.

In its order denying the Government's posttrial motion in Petty, the district court responded to the Elsworth opinion as follows:

Although the court may not have explicitly stated in its order that Mr. Petty's particular ailment (serum sickness) was the risk which should have, under Iowa law, been warned against, the court is now so stating. Inherent in this conclusion is defendant's duty under Iowa law to warn of the risk of serum sickness. As fully elaborated below, the court concludes defendant had a duty under Iowa law to warn plaintiff of the risk of serum sickness in taking the swine flu vaccine and that defendant's failure to adequately warn plaintiff of the risk of serum sickness results in defendant's liability. [Petty v. United States, No. C 78–4083, slip op. at 6 (N.D.Iowa June 8, 1981) (posttrial order) (footnote omitted).]

ing that the swine flu vaccine was the cause-in-fact of Robert Petty's serum sickness. The Government introduced no evidence to counter Dr. Hyden's testimony. Therefore, we do not consider the court's finding of a causal connection between the swine flu vaccine and Petty's serum sickness clearly erroneous. If on remand the district court finds, under Iowa law, a duty to warn of the risk of serum sickness and a breach of that duty, the court need not reconsider its conclusion that the swine flu was the cause-in-fact of Petty's serum sickness.[9]

In remanding this case to the district court, we do not restrict the court to considering Petty's theory of negligence under Iowa law. Petty's complaint contained a claim under the Swine Flu Act on grounds of product liability based on negligence, strict liability, breach of warranty, and misrepresentation, as well as a malpractice claim against the "administrators of [the] vaccine" (based on failure to warn, failure to obtain informed consent, and negligence). Petty also asserted a claim of negligence against the United States under the Federal Tort Claims Act. The district court dismissed all claims other than the claim of negligence against the United States under section 247b(j)(1)(F).

The Swine Flu Act makes the United States liable for its own acts or omissions only to the same extent as under the FTCA, which does not make the United States liable on a theory of strict liability. The Act also provides, however, that the United States may be liable for the act or omission of a program participant on any theory cognizable under Iowa law, including strict liability.[10] *See* 42 U.S.C. § 247b(k)(2)(A)(i) (1976). On remand, therefore, the district court should also consider whether Petty has established liability based on the act or omission of a program participant.

Finally, the record in this case indicates the bulk of the evidence presented by both sides comes from depositions taken in the Multidistrict Litigation, rather than from live testimony presented to the district court. Much of the medical testimony related to Guillain-Barre Syndrome, or general knowledge about postvaccinal side effects. This deposition evidence did not address directly the state of knowledge about or foreseeability of serum sickness. On remand, therefore, the district court may base its decision on the existing record or it may, in its discretion, permit the parties to introduce additional evidence.

We vacate the judgment of the district court and remand the cause for proceedings consistent with this opinion. Each party will bear its own costs.

---

**9.** If Petty establishes the other elements of his cause of action based on the Government's negligence, the district court may be required to determine whether, under Iowa law, the lack of an adequate warning was the *proximate cause* of Petty's illness. That is, because Petty challenges the adequacy of the warning of the risks and benefits of receiving the swine flu vaccine, the district court may have to consider whether Iowa law requires Petty to prove that his illness resulted from the lack of an adequate warning. *See Perin v. Hayne*, 210 N.W.2d 609, 618 (Iowa 1973) (dicta) (recovery against surgeon for negligence precluded unless plaintiff establishes that she would not have submitted to the procedure if advised of risk); *see also Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1281 (5th Cir. 1974) (when consumer sustains reasonably foreseeable injury from product sold without required warning, rebuttable presumption arises that consumer would have read warning and acted to minimize risks); *Canterbury v. Spence*, 464 F.2d 772 (D.C.Cir. 1972) (objective standard applied in determining proximate cause; if adequate disclosure of risks of surgical procedure could reasonably be expected to have caused a prudent person to reject treatment, causation is shown).

**10.** *See supra* pp. 725–727 & n.6.