Bettie Keown DANIELS,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 81–7982.

United States Court of Appeals,
Eleventh Circuit.

May 2, 1983.

R. Ben Hogan, III, Hogan, Smith & Alspaugh, Birmingham, Ala., for plaintiff-appellant.

Herbert J. Lewis, III, Asst. U.S. Atty., Birmingham, Ala., Jeffrey Axelrad, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before TJOFLAT, HILL and JOHNSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Bettie Keown Daniels, appellant in this proceeding, filed suit in the district court seeking to recover compensatory damages from the United States Government under the Swine Flu Act [hereinafter Act], 42 U.S.C. § 247b(j) *et seq.,* pursuant to the Federal Tort Claims Act [hereinafter FTCA], 28 U.S.C. §§ 1346(b) and 2671 *et seq.* Appellant asserted that the Government was either negligently or strictly liable in failing to give her adequate warning of all known risks and benefits of the vaccine. Shortly after the action was filed, it was transferred to the United States District Court for the District of Columbia for coordinated and consolidated pre-trial proceedings.[1] The action was subsequently remanded to Alabama for local discovery and trial. On July 14, 1981, the trial commenced. At the conclusion of the trial, the court filed a memorandum opinion and entered judgment in favor of the United States. Appellant filed a motion for new trial and/or modification and extension of the judgment. The trial court denied the motion for new trial, but did extend its

---

1. Decisions of the Judicial Panel on Multidistrict Litigation transferring swine flu cases are reported. *In re Swine Flu Immunization Products Liability Litigation,* 446 F.Supp. 244 (Jud. Pan.Mult.Lit.1978); 453 F.Supp. 648 (Jud.Pan. Mult.Lit.1978); 464 F.Supp. 949 (Jud.Pan.Mult. Lit.1979).

findings in a subsequent order. Appellant then timely filed this appeal.

## I. FACTS

Appellant was inoculated with the swine flu vaccine at a shopping center in Montgomery, Alabama on October 21, 1976. The United States Government, through public health authorities authorized and disseminated the vaccine. Prior to taking the vaccine, appellant was given a form entitled *"Important Information About Swine Influenza (Flu) Vaccine* (monovalent)." The form provided space for people to fill out personal information and sign it. The form in its entirety stated the following:

## IMPORTANT INFORMATION ABOUT SWINE INFLUENZA (FLU) VACCINE (MONOVALENT)

July 15, 1976

The Disease

Influenza (flu) is caused by viruses. When people get flu they may have fever, chills, headache, dry cough or muscle aches. Illness may last several days or a week or more, and complete recovery is usual. However, complications may lead to pneumonia or death in some people. For the elderly and people with diabetes or heart, lung, or kidney diseases, flu may be especially serious.

It is unlikely that you have adequate natural protection against swine flu, since it has not caused widespread human outbreaks in 45 years.

The Vaccine

The vaccine will not give you flu because it is made from killed viruses. Today's flu vaccines cause fewer side effects than those used in the past. In contrast with some other vaccines, flu vaccine can be taken safely during pregnancy.

One shot will protect most people from swine flu during the next flu season; however, either a second shot or a different dosage may be required for persons under age 25. If you are under 25 and a notice regarding such information is not attached, this information will be provided to you wherever you receive the vaccine.

Possible Vaccine Side Effects

Most people will have no side effects from the vaccine. However, tenderness at the site of the shot may occur and last for several days. Some people will also have fever, chills, headache, or muscle aches within the first 48 hours.

Special Precautions

As with any vaccine or drug, the possibility of severe or potentially fatal reactions exists. However, flu vaccine has rarely been associated with severe or fatal reactions. In some instances people receiving vaccine have had allergic reactions. You should note very carefully the following precautions:

- Children under a certain age should not routinely receive flu vaccine. Please ask about age limitations if this information is not attached.
- People with known allergy to eggs should receive the vaccine only under special medical supervision.
- People with fever should delay getting vaccinated until the fever is gone.
- People who have received another type of vaccine in the past 14 days should consult a physician before taking the flu vaccine.

*If you have any questions about flu or flu vaccine, please ask.*

----------------------------------------------------------------------

REGISTRATION FORM

*I have read the above statement about swine flu, the vaccine, and the special precautions, I have had an opportunity to ask questions, including questions regarding vaccination recommendations for persons under age 25, and understand the benefits and risks of flu vaccination. I request that it be given to me or to the person named below of whom I am the parent or guardian.*

| INFORMATION ON PERSON TO RECEIVE VACCINE | FOR CLINIC USE |
|---|---|
| Name (Please Print)　　　　Birthdate　　Age | Clinic Ident. |
| Address　　　　　　　　County of Residence | Date Vaccinated |
| Signature of person to receive vaccine or Parent or Guardian　　Date | Manufacturer and Lot No. |

U.S. Department of Health, Education, and Welfare / Public Health Service / Center for Disease Control / Atlanta, Georgia 30333

Appellant read, signed and returned the form to the appropriate health officials. She then received the vaccine. Later that same day appellant began experiencing symptoms of nausea, weakness, aching muscles and chills. She was initially treated by her personal physician and subsequently, she was admitted to the hospital for a period of two days. The diagnosis at the hospital was "serum-type reaction" to the swine flu vaccine.

Appellant continued to see several neurologists who came to the same conclusion as her personal physician. In July 1980, appellant was again hospitalized for examination and evaluation by Dr. Joseph Leuschke, another neurologist. Dr. Leuschke's final diagnosis was "left hemiparesthesia" of undetermined etiology.

The Government, after this suit was filed, had a board certified neurologist, Dr. Gordon J. Kirschberg, examine the appellant. Dr. Kirschberg's diagnosis was that appellant had suffered a localized brachial neuropathy due to the swine flu vaccination.[2]

At trial, both the appellant and the Government presented unending medical evidence and testimony regarding appellant's reaction to the vaccination and the adequacy of the warning on the form supplied by the Government to all recipients of the shot.

## II. ISSUES ON APPEAL

Appellant has alleged that the Government was negligent or strictly liable in not providing her with an adequate warning of the potential side effects and benefits of the swine flu vaccination. The threshold question presented on appeal is whether the warning given in the consent form, which was read and executed by appellant, was adequate.

### (a) State law is controlling

Appellant assigns error to the district court for applying state law rather than federal law under the mandate of the Act. Appellant contends that the Act created a greater duty to warn of risks and benefits of the vaccination than is required under state law.

2. The Government filed, as a response to the plaintiff's request for admissions, the following: "Defendant admits that plaintiff suffered a localized brachial neuropathy which, in the opinion of Dr. Gordon J. Kirschberg, was a reaction to the swine flu vaccination."

■ Because Congress was concerned that the public have some recourse for claims of negligence against it, the Act mandated that all claims were to be made directly against the United States through the procedures delineated in the Federal Tort Claims Act. Specifically, 42 U.S.C. § 247b(k)(2)(A) states:

The United States shall be liable with respect to claims submitted after September 30, 1976 for personal injury or death arising out of the administration of swine flu vaccine under the swine flu program and based upon the act or omission of a program participant *in the same manner and to the same extent as the United States would be liable in any other action brought against it under such section* 1346(b) and chapter 171 [The Federal Tort Claims Act] . . . . (emphasis added).

This statute makes it clear that Congress intended that liability be determined in accordance with the FTCA. Under the FTCA the United States shall be held liable, in a tort action, in the same manner and to the same extent that a private individual would be *under the law of the place where the tort occurred.* 28 U.S.C.A. § 2674. The FTCA was not intended to create new theories of liability, but rather, to allow recovery against the United States in cases of ordinary torts. *Feres v. United States,* 340 U.S. 135, 142, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950).

■ This court agrees with the analysis applied in *Petty v. United States,* 679 F.2d 719 (8th Cir.1982). In *Petty,* the district court concluded that the Act did impose a federal statutory standard. The eighth circuit vacated and remanded holding:

The FTCA does not contain its own substantive standard of care against which to measure the conduct of government employees, but instead directs that liability should be determined according to the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b) (1976). Because the Swine Flu Act incorporates by reference the liability provisions of the FTCA, state law standards also apply to claims brought under the Swine Flu Act.

. . . .

Indeed, the Swine Flu Act does not contain a particularized formulation of the duty imposed on the Government or program participants. As under the Federal Tort Claims Act, liability under the Swine Flu Act depends on the law of the place where the act or omission occurred. *See* 42 U.S.C. § 247b(k)(2)(A) (1976). Thus, when a vaccinee sues the United States for negligently carrying out one of its tasks under the Program by failing to provide adequate warning to potential vaccinees, state law supplies the applicable standard of care.

Other courts have concluded that state law is controlling. *See Marneef v. United States,* 533 F.Supp. 129 (E.D.Mich.1981); *Bean v. United States,* 533 F.Supp. 567 (D.Col.1980) *Gundy v. United States,* Civil Action No. 79–F–587 (D.Col., September 9, 1980). The clear mandate of the Act and of the FTCA requires the courts to look to the law of the state where the act or omission occurred in determining liability.

### (b) Alabama law

As the district court correctly noted, Alabama appears to have no substantive case law on the issue of informed consent. However, the Alabama Supreme Court noted in *Tant v. Women's Club,* 382 So.2d 1120 (1980) that there was an excellent discussion on informed consent in *Canterbury v. Spence,* 464 F.2d 772 (D.C.Cir.1972). *Tant,* 382 So.2d at 1123 n. 2.

In *Canterbury,* the plaintiff sought damages for personal injury allegedly sustained as a result of an operation negligently performed by a surgeon. The main allegation asserted by plaintiff was that the doctor negligently failed to disclose a known 1% risk of serious disability inherent in the operation. The court held that it is the physician's duty to warn of the dangers of a particular course of treatment. *Id.* at 782–83. In determining exactly what the duty to disclose involves, the *Canterbury* court held: "the standard measuring performance of that duty by physicians, as by oth-

ers, is conduct which is reasonable under the circumstances." *Id.* at 785.

 Based on the notation to this standard in *Tant,* we conclude that Alabama would follow the reasonableness standard regarding informed consent. Appellant concedes in her brief at page 29 "[i]f the Swine Flu Act did not modify the ordinary standard of care applicable to the Government in a 'duty to warn' claim brought under the FTCA, then this appeal has no merit." We agree. There is sufficient evidence that the warning/consent form issued by the United States was reasonable. Having found the warning to be adequate, there is no theory upon which plaintiff/appellant may base liability.

AFFIRMED.