[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10305
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-21422-DPG

ODALVIS FERNANDEZ,
JULIO RODRIGUEZ,

Plaintiffs - Appellants,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 12, 2019)

Before MARCUS, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

This appeal concerns whether the United States is immune from suit based on Florida's recreational use statute for an injury that occurred on an area made available to the public for recreational use without charge. Odalvis Fernandez and Julio Rodriguez were swimming near the island of Boca Chita Key in Biscayne National Park near Miami, Florida, when Fernandez injured her foot by stepping on a submerged piece of rebar. Fernandez and Rodriguez sued the United States for negligence under the Federal Tort Claims Act ("FTCA").[1] The FTCA provides that the United States may be sued for actions in negligence if a private party would be subject to suit in the same circumstances. 28 U.S.C. § 1346(b)(1). The district court granted the United States' motion to dismiss for lack of subject matter jurisdiction because Florida's recreational use statute limits the liability of persons who make a portion of their property available for recreational use without charge. We agree with the district court and affirm.

## I.    BACKGROUND

### A. Factual Background and Procedural History.

On July 12, 2015, Odalvis Fernandez and Julio Rodriguez traveled on their boat to Boca Chita Key, an island located in Biscayne National Park, near Miami, Florida. They anchored the boat in the waters of Biscayne Bay near Boca Chita

---

[1] Rodriguez brought a related claim for loss of consortium that is not at issue in this appeal.

2

Key and went swimming in the designated swimming area, which was marked by white buoys with "a red symbol—a diamond shape with an X inside—and lettering designating the beach as a swim area and prohibiting marine vessels from entering." While they were swimming, Fernandez injured her foot by stepping on a piece of rebar protruding from a submerged piece of concrete.

Biscayne National Park is owned by the United States and managed by the National Park Service. The National Park Service does not charge for entry into Biscayne National Park but charges a $25.00 fee for camping or docking at Boca Chita Key and Elliott Key, except during the summer when the fees are waived. The National Park Service also rents the pavilion on Boca Chita Key for a fee of $100.00 for four hours. The National Park Service charges no other fees in Biscayne National Park.

Fernandez and Rodriguez filed their amended complaint against the United States on August 4, 2017, alleging negligence under the FTCA. The United States moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that it is immune from liability under Florida's recreational use statute, Fla. Stat. § 375.251, because Fernandez's injury occurred in the designated swimming area of the park, which is made available to the public free of charge. In response, Fernandez and Rodriguez argued that the United States is not immune from liability because the National Park Service charges fees for

3

camping and docking in Biscayne National Park. The district court granted summary judgment in favor of the United States, concluding that "a plain reading of the statute as a whole suggests that liability will not attach unless the injury occurred in a distinct area where revenue is derived from patronage." Fernandez and Rodriguez appealed.

### B. The FTCA and Florida's Recreational Use Statute.

The FTCA provides that the United States district courts have jurisdiction over damages claims against the United States alleging injury caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Therefore, to determine whether the United States has waived its sovereign immunity under the FTCA, we must look to the law of the State where the act or omission giving rise to the litigation occurred. *Daniels v. United States*, 704 F.2d 587, 591 (11th Cir. 1983); 28 U.S.C. § 2674. In this case, we look to Florida law.

Florida's recreational use statute, Fla. Stat. § 375.251, generally limits the liability of private persons who make land, water, and park areas available to the

4

public for recreational use without charge. Fla. Stat. § 375.251. Specifically,

section 375.251 currently provides, in relevant part:[2]

> (1) The purpose of this section is to encourage persons to make land, water areas, and park areas available to the public for outdoor recreational purposes by limiting their liability to persons using these areas and to third persons who may be damaged by the acts or omissions of persons using these areas.
>
> (2)(a) An owner or lessee who provides the public with *an area* for outdoor recreational purposes owes no duty of care to keep that *area* safe for entry or use by others, or to give warning to persons entering or going on that *area* of any hazardous conditions, structures, or activities *on the area*. An owner or lessee who provides the public with *an area* for outdoor recreational purposes:
>
>> 1. Is not presumed to extend any assurance that *the area* is safe for any purpose;
>>
>> 2. Does not incur any duty of care toward a person who goes on *the area*; or
>>
>> 3. Is not liable or responsible for any injury to persons or property caused by the act or omission of a person who goes on *the area*.
>
> . . .
>
> *(c) The Legislature recognizes that an area offered for outdoor recreational purposes may be subject to multiple uses. The limitation of liability extended to an owner or lessee under this subsection applies only if no charge is made for entry to or use of the area for outdoor recreational purposes and no other revenue is derived from patronage of the area for outdoor recreational purposes.*
> . . .
>
> *(5) As used in this section, the term:*

---

[2] Throughout this opinion, as we discuss both the current and former versions of the statute, we use italics to show the portions of the statute that were amended by the Florida legislature in 2012.

*(a) "Area" includes land, water, and park areas.*

*(b) "Outdoor recreational purposes" includes, but is not limited to, hunting, fishing, wildlife viewing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, motorcycling, and visiting historical, archaeological, scenic, or scientific sites.*

The question we must answer in this appeal is whether section 375.251 shields an owner or lessee from liability for an injury occurring in an area of a park in which no fees are charged even though fees are charged elsewhere in the park.

We have addressed that question as it relates to an earlier version of section 375.251. *See Kleer v. United States*, 761 F.2d 1492 (11th Cir. 1985). *Kleer* concerned an accident in which William Russell Kleer suffered a fractured neck as a result of diving off the Florida State Route 19 bridge in the Juniper Springs area of the Lake George District of the Ocala National Forest. *Id.* at 1493. Kleer argued that Florida's recreational use statute did not shield the United States from liability because the Forest Service charged a fee for entry into parts of the Ocala National Forest, though not the Lake George District. At the time of *Kleer*, former section 375.251 provided in relevant part:

(1) The purpose of this section is to encourage persons to make land, water areas, and park areas available to the public for outdoor recreational purposes by limiting their liability to persons using these areas and to third persons who may be damaged by the acts or omissions of persons using these areas.

6

(2)(a) An owner or lessee who provides the public with *a park area* for outdoor recreational purposes owes no duty of care to keep that *park area* safe for entry or use by others, or to give warning to persons entering or going on that *park area* of any hazardous conditions, structures, or activities thereon. An owner or lessee who provides the public with *a park area* for outdoor recreational purposes *shall not by providing that park area*:

> 1.  Be presumed to extend any assurance that *such park area* is safe for any purpose,

> 2.  Incur any duty of care toward a person who goes on that *park area*, or

> 3.  Become liable or responsible for any injury to persons or property caused by the act or omission of a person who goes on *that park area*.

*(b) This section shall not apply if there is any charge made or usually made for entering or using such park area, or any part thereof, or if any commercial or other activity for profit is conducted on such park area, or any part thereof.*

…

(5) The term "outdoor recreational purposes" as used in this act shall include, but not be limited to, hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving nature study, water skiing, motorcycling, and visiting historical, archaeological, scenic or scientific sites.

We concluded that section 375.251 foreclosed Kleer's claim against the United States because "the statute bars suits for injuries sustained in areas of parks where no fee is charged and no commercial activity takes place" and no fee was charged for entry into the Lake George area of the Ocala National Forest. *Id.* at 1495. We explained that "the phrase 'park area' denotes something less than the

7

entire parcel of land," meaning that the relevant area for purposes of the exception from limited liability is the area in which the injury took place. *Id.* We also explained that a narrow reading of the exception from protection against liability is consistent with the statute's express purpose to encourage people to make their land available to the public for recreational use without compensation. *Id.*

Further, we looked to the construction of section 375.251 in two related Florida state court decisions—*Abdin v. Fischer*, 374 So.2d 1379 (Fla. 1979) and *Sea Fresh Frozen Products, Inc. v. Abdin*, 411 So.2d 218 (Fla. 5th Dist. Ct. App. 1982). *Abdin* arose from an accident in which the plaintiff slipped and fell on a boat ramp, which was open to the public free of cost. 374 So.2d at 1379. The defendant also maintained a retail and wholesale business on three separate parcels of land. *Id.* at 1379–80. The state trial court entered summary judgment in favor of the defendant. *Id.* at 1381. The Supreme Court of Florida reversed, concluding that whether commercial activity occurred in the park area was a question of fact for the jury to resolve. *Id.* After remand and on appeal, the Florida Fifth District Court of Appeals concluded that the evidence was insufficient to prove that the defendant conducted commercial activity within the area where the accident took place. *Sea Fresh Frozen Prods.*, 411 So. 2d at 220. We concluded that the "*Abdin* rule" was that the fact that "commercial activity was conducted in other areas of the defendant's property did not preclude the defendant from invoking the protection

of section 375.251 [when no commercial activity was conducted within the park area where the injury occurred]." *Kleer*, 761 F.2d at 1494.

The Florida legislature amended section 375.251 to its current version in 2012, more than 26 years after the *Kleer* decision. The relevant 2012 amendments replaced:

> This section shall not apply if there is any charge made or usually made for entering or using such park area, or any part thereof, or if any commercial or other activity for profit is conducted on such park area, or any part thereof.

Fla. Stat. § 375.251(2)(b) (1975), with:

> The Legislature recognizes that an area offered for outdoor recreational purposes may be subject to multiple uses. The limitation of liability extended to an owner or lessee under this subsection applies only if no charge is made for entry to or use of the area for outdoor recreational purposes and no other revenue is derived from patronage of the area for outdoor recreational purposes.

Fla. Stat. § 375.251(2)(c) (2012). The amendments also added a definition of "area" to include "land, water, and park areas," *id.* § 375.251(5)(a), and changed "park area" to "area," *id.* § 375.251

## II.    STANDARD OF REVIEW

We review de novo a district court's dismissal of an action for lack of subject matter jurisdiction. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*

9

*of Am.*, 511 U.S. 375, 377 (1994). "[T]he burden of establishing [subject matter jurisdiction] rests upon the party asserting jurisdiction." *Id.* Given that the United States raised a facial challenge to the complaint, we look to see if Fernandez and Rodriguez "sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

## III.    DISCUSSION

Fernandez and Rodriguez argue that the district court erred in dismissing the complaint for lack of subject matter jurisdiction because the United States would be subject to liability under Florida's recreational use statute as a private party. *See* 28 U.S.C. § 1346(b)(1); Fla. Stat. § 375.251. First, they argue that the plain language of section 375.251 supports their reading, but that even if it does not, we should reject the statute's plain meaning because it leads to absurd results. Second, they argue that the 2012 amendments render this Court's decision in *Kleer* inapplicable. Third, they argue that even if this Court agreed with the district court that the United States has immunity with respect to injuries occurring in distinct areas made available to the public without charge, there is a disputed factual question as to whether the swimming area is a distinct area of Biscayne National

10

Park. For the reasons that follow, we find each of Fernandez and Rodriguez's arguments unpersuasive.

### A. Section 375.251 Provides that Liability Attaches Only if Charges Are Made in the Distinct Area Where the Injury Occurred.

"When construing the language of a statute, we 'begin where all such inquiries must begin: with the language of the statute itself,' and we give effect to the plain terms of the statute." *In re Valone*, 784 F.3d 1398, 1402 (11th Cir. 2015) (alteration adopted) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). "We do not look at one word or term in isolation, but instead we look to the entire statutory context." *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999).

At the same time, we are not deciding this case on a blank slate, and therefore, this Court's decision in *Kleer* must guide our analysis. "The Legislature is presumed to know the judicial constructions of a law when amending that law, and the Legislature is presumed to have adopted prior judicial constructions of a law unless a contrary intention is expressed." *Fla. Dep't of Children & Families v. Florida*, 880 So.2d 602, 609 (Fla. 2004) (citing *City of Hollywood v. Lombardi*, 770 So.2d 1196, 1202 (Fla. 2000)). We presume that the legislature "adopt[ed] the existing interpretation unless it affirmatively acts to change the meaning." *Bledsoe v. Palm Beach Cty. Soil & Water Conservation Dist.*, 133 F.3d 816, 822 (11th Cir. 1998). Therefore, our analysis is focused on the question of whether anything in

11

the 2012 amendments "affirmatively acts to change the meaning" ascribed to section 375.251 by *Kleer*. *Id.*[3]

Starting at the beginning of the statute, the legislature did not amend the express statutory purpose contained in subsection (1). Subsection (1) provides: "The purpose of this section is to encourage persons to make land, water, areas, and park areas available to the public for outdoor recreational purposes by limiting their liability to persons using these areas." Fla. Stat. § 375.251(1). The legislature also directed courts to "liberally construe[]" the provisions of the statute in order to accomplish that purpose. Fla. Stat. § 375.061. The *Kleer* decision, and the district court's decision, are both consistent with that express statutory purpose.

Next, the legislature amended subsection (2)(a) by changing "park area" to "area." That subsection currently provides the general rule that "[a]n owner or lessee who provides the public with *an area* for outdoor recreational purposes owes no duty of care to keep *that area* safe for entry or use by others." Fla. Stat. § 375.251(2)(a). At the time of *Kleer*, that provision read: "[a]n owner or lessee who provides the public with *a park area* for outdoor recreational purposes owes

---

[3] Fernandez and Rodriguez also argue that we should reject *Kleer* altogether because it improperly applied Florida Supreme Court precedent. However, we may not depart from a prior panel's decision "based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time." *Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001); *see also United States v. Steele*, 147 F.3d 1316, 1317–18 (11th Cir. 1998) (en banc) ("Under our prior panel precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong.").

no duty of care to keep *that park area* safe for entry or use by others." Fla. Stat. § 375.251 (1975). A similar change was made to subsection (2)(c) which limits the general rule in subsection (2)(a) to situations in which "no charge is made for entry to or use of *the area* for recreational purposes and no other revenue is derived from patronage of *the area* for recreational purposes." *Id.* § 375.251(2)(c). When this Court decided *Kleer* the subsection provided that the limitation on liability shall not apply "if there is any charge made or usually made for entering or using *such park area*, or any part thereof, or if any commercial or other activity for profit is conducted on *such park area*, or any part thereof." Fla. Stat. § 375.251 (1975).

The general rule contained in subsection (2)(a) thus remains the same as the previous version except for the substitution of "park area" for "area." Fernandez and Rodriguez argue that this change reflects an affirmative act to change the *Kleer* interpretation because the legislature removed every reference to the term "park area" that was at issue in *Kleer*. However, the legislature did not eliminate every reference to "park area" but only moved it into the definition of "area." At the time this Court decided *Kleer*, the statute used the term "park area" but did not define that term. This Court held that subsection (2)(a), and subsection (2)(c) which we discuss specifically later, refer to the particular area where the injury occurred because "park area" denotes something less than the entire parcel. With the 2012 amendments, the legislature simply changed the word in subsection (2)(a) to "area"

13

and provided the following definition: "'Area' includes land, water, and park areas." Fla. Stat. § 375.251(5)(a). Accordingly, while this change expands the types of areas within the statute to include land areas and water areas, it nonetheless keeps the limiting term "area" such that our *Kleer* analysis continues to apply. Further, this change is consistent with the express statutory purpose to "encourage persons to make land, water areas, and park areas available to the public," *id.* § 375.251(1), which was not changed.

Fernandez and Rodriguez also argue that the new definition of "area" itself reflects the legislature's intent to change the *Kleer* interpretation of "park area" as denoting something less than the entire parcel by including a broad definition of "area." However, the statutory definition merely tracks what *Kleer* said—that a "park area" is something less than the entire parcel. The fact that the legislature decided to add land areas and water areas does not change the essential fact, recognized in *Kleer*, that a park area means something less than the entire parcel.

Turning to the exception to the limitation on liability in subsection (2)(c), as already explained, that subsection continues to provide that an owner or lessee is not exempted from liability if he charges for entry into or use of the area. The "entry to or use of" clause remains substantively the same. And although the legislature changed "any commercial or other activity for profit" to "revenue derived from patronage," that change is immaterial to the question presented here

14

because it concerns the types of charges that cause the exception from limited liability to apply, not the scope of the relevant area. Fernandez and Rodriguez argue that by adding a new first sentence to subsection (2)(c) the legislature affirmatively rejected *Kleer*. That sentence reads: "The Legislature recognizes that an area offered for outdoor recreational purposes may be subject to multiple uses." But that sentence tracks *Kleer* and simply made explicit what was implicit in the previous version of the statute—that an area might be subject to multiple uses. Accordingly, we find nothing in the text of section 375.251 that constitutes an affirmative act by the legislature to change the interpretation provided in *Kleer*.

Finally, in subsection (5), the legislature added the definition of "area," which includes three different types of areas—"land, water, and park areas." *Id.* § 375.251(5)(a). Before the amendment, the statute referred only to "park area." As already explained, this change clarifies that land areas, water areas, and park areas are within the scope of section 375.251, consistent with the express statutory purpose to "encourage persons to make land, water areas, and park areas available to the public." *Id.* § 375.251(1). Accordingly, it tracks *Kleer*'s holding that the exception from limited liability applies only if an owner or lessee charges fees in the particular area where the injury occurred. We also find no affirmative act to change *Kleer* in the amendment to subsection (5)(b). That amendment changed "*[t]he term* 'outdoor recreational purposes' *as used in this act shall include, but*

15

*not be limited to*, hunting, fishing, wildlife viewing, swimming, boating, camping, picnicking, hiking pleasure driving, nature study, water skiing, motorcycling, and visiting historical, archaeological, scenic, or scientific sites" to "'[o]utdoor recreational purposes' *includes, but is not limited to,* hunting, fishing, wildlife viewing, swimming, boating, camping, picnicking, hiking pleasure driving, nature study, water skiing, motorcycling, and visiting historical, archaeological, scenic, or scientific sites." That minor change to the definition of a term not at issue in *Kleer* does not reflect an affirmative attempt to change *Kleer*'s holding that "park area" denotes something less than the entire parcel.

Fernandez and Rodriguez argue that even if the plain meaning of section 375.251 continues to require adherence to *Kleer*, we should reject that plain meaning because it leads to absurd results. In particular, they assert that the legislature could not have intended the anomalous result that the United States would be immune with respect to injuries occurring in the pavilion on Boca Chita Key but not in the designated swimming area or on the walkway to the pavilion. We disagree that such result is absurd. The legislature could reasonably have decided to limit liability with respect to each specific area that is made available free of charge in order "to encourage persons to make land, water areas, and park areas available to the public for outdoor recreational purposes by limiting their

16

liability to persons using these areas." Fla. Stat. § 375.251(1). In fact, that is exactly what this Court recognized in *Kleer*. *Kleer*, 761 F.2d at 1495.

Having found nothing in the text of section 375.251 that clearly shows the legislature sought to change *Kleer*'s interpretation of that statutory provision, we apply the holding of *Kleer* that an owner or lessee is immune from liability so long as he makes no charges in the particular area where the injury occurred.

### B. It is Undisputed that the United States Does Not Charge Fees for Use of or Derive Revenue from the Relevant Park Area.

Fernandez and Rodriguez argue that even if we conclude that the United States is not liable for injuries occurring in distinct areas where no fees are changed, a disputed factual question exists about whether the swimming area, the boat dock, the pavilion, and the camping areas are inextricably intertwined such that they are one area for purposes of section 375.251. However, we do not find such issue fairly disputed.[4] Fernandez and Rodriguez's amended complaint does not allege that the swimming area is so intertwined with other areas of Biscayne National Park that it is not a distinct area. In fact, the amended complaint alleges

---

[4] Fernandez and Rodriguez argue that Florida courts often have determined that the applicability of section 375.251 is an issue of fact that must be decided by a jury citing *Abdin*, 374 So.2d at 1380, *Arias v. State Farm Fire & Casualty Co.*, 426 So.2d 1136, 1139 (Fla. 1st Dist. Ct. App. 1983), and *Goodman v. Juniper Springs Canoe Rentals & Recreation, Inc.*, 983 F. Supp. 1384, 1387 (M.D. Fla. 1997). However, in those cases, there were disputed factual issues about whether the defendant owned the relevant area or whether the defendant charged fees or received revenue from such area. Here, Fernandez and Rodriguez do not dispute that the United States owns Biscayne National Park, nor do they dispute that the United States does not charge fees for or receive revenue from use of the designated swimming area.

17

that the "designated swimming area" was surrounded by white buoys with "a red symbol—a diamond shape with an X inside—and lettering designating the beach as a swim area and prohibiting marine vessels from entering." Because we must consider those allegations as true, *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007), we conclude that the swimming area is distinct from the other areas of Boca Chita Key. And since Fernandez and Rodriguez do not allege that the United States charges fees for or derives revenue from use of the designated swimming area, the United States did not waive its sovereign immunity under the FTCA, and the district court properly dismissed the complaint.

## IV.    CONCLUSION

The judgment of the district court is **AFFIRMED**.